SYLLABUS

(This syllabus is not part of the opinion of the Court. It has been prepared by the Office of the Clerk for the convenience of the reader. It has been neither reviewed nor approved by the Supreme Court. Please note that, in the interest of brevity, portions of any opinion may not have been summarized.)

**State v. Ivonne Saavedra (A-68-13) (073793)**

**Argued November 10, 2014 -- Decided June 23, 2015**

**PATTERSON, J., writing for a majority of the Court.**

In this appeal, the Court considers defendant's constitutional and public policy challenges to the official misconduct and theft statutes as they apply to her indictment. Among other challenges, defendant argues that this Court's decision in Quinlan v. Curtiss-Wright Corp., 204 N.J. 239 (2010), immunized her conduct and prohibited her prosecution because the public documents at issue were taken for use in employment discrimination litigation.

Defendant, an employee of the North Bergen Board of Education (Board), filed an action asserting statutory and common law employment discrimination claims against the Board. In discovery, defendant's counsel produced several hundred documents that allegedly had been removed or copied from Board files. According to the Board, the documents included highly confidential student educational and medical records that were protected by federal and state privacy laws. The Board reported the alleged theft of its documents to the county prosecutor.

The State presented the matter to a grand jury, where a Board attorney testified about defendant's position with the Board, the Board's discovery through the civil litigation that defendant possessed documents from its files, and the privacy implications of the alleged appropriation of the documents. The grand jury indicted defendant for official misconduct and theft by unlawful taking of public documents. Defendant moved to dismiss the indictment, arguing that the State failed to present evidence sufficient to support the indictment and withheld exculpatory evidence about her motive. She also contended that her removal of documents for use in her employment discrimination claim was sanctioned by this Court's decision in Quinlan. The trial court denied the motion.

The Appellate Division granted defendant's motion for leave to appeal, and, in a published decision, the panel affirmed the trial court's denial of defendant's motion to dismiss the indictment. 433 N.J. Super. 501, 507 (App. Div. 2013). One member of the panel dissented, reasoning that defendant's taking of the documents was protected activity under the Law Against Discrimination, the Conscientious Employee Protection Act, and Quinlan.

The Court granted defendant's motion for leave to appeal. 217 N.J. 289 (2014).

**HELD**: The trial court properly denied defendant's motion to dismiss her indictment. The State presented to the grand jury a prima facie showing with respect to the elements of each offense charged in the indictment and the State did not withhold from the grand jury exculpatory information or a charge regarding a defense that it was compelled by law to present. Defendant's indictment does not violate due process standards or New Jersey public policy by conflicting with this Court's decision in Quinlan, which does not govern the application of the criminal laws at issue in this appeal.

1. The Court first considers whether the trial court properly exercised its discretion in holding that the State presented a prima facie showing on the elements of the charged offenses and that the State did not withhold exculpatory evidence that it had a duty to present. A trial court deciding a motion to dismiss an indictment determines whether, viewing the evidence and the rational inferences drawn therefrom in the light most favorable to the State, a grand jury could reasonably believe that a crime occurred and that the defendant committed it. A court should not disturb an indictment if there is some evidence establishing each element of the crime. (pp. 16-18)

2. The first offense for which defendant was indicted is official misconduct. To establish a prima facie case of that offense, the State was required to present evidence that: (1) defendant was a "public servant" (2) who, with the purpose to obtain a benefit or deprive another of a benefit, (3) committed an act relating to but constituting an unauthorized exercise of her office, (4) knowing that such act was unauthorized or that she was committing such act in an unauthorized manner. N.J.S.A. 2C:30-2(a). Before the grand jury, the State presented evidence (1) of

defendant's employment by the Board as a clerk; (2) that defendant removed documents from the Board's files in order to use them in her discrimination litigation against the Board; (3) that defendant obtained the documents from the Board's files through her employment, and that Board policy did not permit her to have them in her possession; and (4) that through the Board's internal confidentiality policies, employees are trained and informed that the documents at issue are highly confidential and must not be tampered with. Thus, the State met its burden to present prima facie evidence on all four elements of official misconduct in violation of N.J.S.A. 2C:30-2(a). (pp. 18-25)

3. The second offense for which defendant was indicted is theft by unlawful taking of movable property. "A person is guilty of theft if he unlawfully takes, or exercises unlawful control over, movable property of another with purpose to deprive him thereof." N.J.S.A. 2C:20-3(a). The offense of theft constitutes a crime of the third degree if "[i]t is of a public record, writing or instrument kept, filed or deposited according to law with or in the keeping of any public office or public servant." N.J.S.A. 2C:20-2(b)(2)(g). Before the grand jury, the State presented evidence that (1) defendant collected several hundred confidential records from her employer, in contravention of the employer's policy; (2) a significant portion of those documents were the Board's "original" copies, the removal of which left the Board without the document in its files; and (3) the documents constituted public records, writings or instruments kept according to law with or in the keeping of any public office or public servant. Accordingly, the State met its burden of presenting a prima facie case with respect to each element of both offenses. (pp. 25-27)

4. The Court next considers whether the trial court abused its discretion in deciding that the State did not withhold clearly exculpatory evidence that would negate defendant's guilt as to one or both offenses, and whether the State properly did not charge the grand jury as to a defense. Defendant contends that the State withheld evidence that she collected her employer's documents for purposes of her employment discrimination case. However, the State presented testimony that defendant had an "outstanding" lawsuit against the Board, and the prosecutor had no obligation to suggest that defendant thought that because she maintained an employment discrimination claim, her conduct was sanctioned by law. Moreover, the State was not obligated to charge the grand jury regarding a potential defense based on justification. It is only when the facts known to the prosecutor clearly indicate or clearly establish the appropriateness of an instruction that the duty of the prosecution arises. (pp. 27-32)

5. The Court next considers defendant's constitutional and public policy arguments, which are founded upon her interpretation of this Court's decision in Quinlan. To defendant, Quinlan stands for the proposition that an employee has a legally recognized right to take confidential employer documents for use in employment discrimination litigation, and, accordingly, criminal prosecution for that act is barred by due process principles and public policy. However, the Court's decision in Quinlan did not endorse self-help as an alternative to the legal process in employment discrimination litigation. Nor did Quinlan address any issue of criminal law. Indeed, nothing in Quinlan states or implies that the anti-discrimination policy of the LAD immunizes from prosecution an employee who takes his or her employer's documents for use in a discrimination case. Accordingly, no constitutional argument or consideration of public policy compels the dismissal of defendant's indictment. (pp. 33-45)

6. Notwithstanding the inapplicability of Quinlan to criminal proceedings, defendant may assert that her intent to use the documents at issue in support of her employment discrimination claim gives rise to a "claim of right" defense or other justification, if the evidence at trial supports such an assertion. The trial court will be in a position to evaluate any such assertion in the setting of a full record regarding defendant's conduct, the content of the documents, the Board's policies regarding the records, and the impact of federal and state privacy laws. (pp. 45-49)

The judgment of the Appellate Division is **AFFIRMED**, and the matter is **REMANDED** to the trial court for proceedings consistent with this opinion.

**ALBIN, J.**, **DISSENTING**, expresses the view that defendant's motive for removing the documents was not disclosed to the grand jury, and that the prosecutor suppressed relevant information sought by the grand jury, thereby denying defendant her right to a fair grand jury presentation. Justice Albin also would require the grand jury to be charged on a claim-of-right defense provided evidence suggests that defendant took the documents under a lawful claim of right for the purpose of pursuing a LAD and CEPA action.

**CHIEF JUSTICE RABNER; JUSTICES LaVECCHIA, FERNANDEZ-VINA, and SOLOMON; and JUDGE CUFF (temporarily assigned) join in JUSTICE PATTERSON's opinion. JUSTICE ALBIN filed a separate, dissenting opinion.**

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

        v.

IVONNE SAAVEDRA,

    Defendant-Appellant.


        Argued November 10, 2014 – Decided June 23, 2015

        On appeal from the Superior Court, Appellate
        Division, whose opinion is reported at 433
        N.J. Super. 501 (App. Div. 2013).

        Mario M. Blanch argued the cause for
        appellant (Mr. Blanch, attorney; Mr. Blanch
        and Valerie Steiner, on the brief).

        Stephanie Davis Elson, Assistant Prosecutor,
        argued the cause for respondent (Gaetano T.
        Gregory, Acting Hudson County Prosecutor,
        attorney).

        Neil M. Mullin argued the cause for amicus
        curiae National Employment Lawyers
        Association/New Jersey (Smith Mullin,
        attorneys; Mr. Mullin and Nancy Erika Smith,
        on the brief).

        Brian J. Uzdavinis, Deputy Attorney General,
        argued the cause for amicus curiae Attorney
        General of New Jersey (John J. Hoffman,
        Acting Attorney General).

        Cynthia J. Jahn, General Counsel, argued the
        cause for amicus curiae New Jersey School
        Boards Association (Ms. Jahn and Donna M.
        Kaye, on the brief).

Mitchell L. Pascual argued the cause for amicus curiae North Bergen Board of Education (Chasan Leyner & Lamparello, attorneys; Mr. Pascual, Michael D. Witt, and Reka Bala, on the brief).

JUSTICE PATTERSON delivered the opinion of the Court.

In this appeal, we review the trial court's denial of defendant Ivonne Saavedra's motion to dismiss her indictment for official misconduct and theft by unlawful taking of public documents. We also consider defendant's constitutional and public policy challenges to the official misconduct and theft statutes as they apply to her case.

Defendant, an employee of the North Bergen Board of Education (Board), filed an action asserting statutory and common law employment discrimination claims against the Board. In the course of discovery in that action, defendant's counsel produced several hundred documents that allegedly had been removed or copied from the Board's files, and were in defendant's possession. According to the Board, the documents taken from its files included original and photocopied versions of highly confidential student educational and medical records that were protected by federal and state privacy laws. The Board reported the alleged theft of its documents to the county prosecutor.

The State presented the matter to a grand jury. A Board attorney testified before the grand jury about defendant's

2

position with the Board, the Board's discovery through the civil litigation that defendant had possession of original and copied documents from its files, and the privacy implications of defendant's alleged appropriation of the documents. The grand jury indicted defendant for official misconduct and theft by unlawful taking.

Defendant moved to dismiss the indictment. She argued that the State failed to present evidence sufficient to support the indictment and withheld from the grand jury exculpatory evidence about defendant's motive in taking the documents. She also contended that because the documents were taken for use in her employment discrimination litigation, this Court's decision in Quinlan v. Curtiss-Wright Corp., 204 N.J. 239 (2010), immunized her conduct as a matter of public policy and prohibited the State from prosecuting her. The trial court denied the motion, and the Appellate Division affirmed the trial court's determination.

We affirm the judgment of the Appellate Division. We hold that the trial court properly denied defendant's motion to dismiss her indictment. We conclude that the State presented to the grand jury a prima facie showing with respect to the elements of each offense charged in the indictment and that the State did not withhold from the grand jury exculpatory information or a charge regarding a defense that it was

3

compelled by law to present.  We further hold that defendant's indictment does not violate due process standards or New Jersey public policy by conflicting with this Court's decision in Quinlan.  The Quinlan case, arising from a plaintiff employee's claim that her employment was terminated after she took documents belonging to her employer and used them in her employment discrimination litigation, concerned the legal standard that governs certain retaliation claims under the New Jersey Law Against Discrimination (LAD), N.J.S.A. 10:5-1 to -42.  Quinlan does not govern the application of the criminal laws at issue in this appeal.

Our decision does not preclude defendant from asserting, as an affirmative defense before the petit jury at trial, that she has a claim of right or other justification based on New Jersey's policy against employment discrimination, because she removed the documents from her employer's premises in order to use them to prosecute her civil claim.  The trial court will be in a position to evaluate any such assertion in the setting of a full record regarding defendant's conduct, the content of the documents, the Board's policies regarding the records, and the impact of federal and state privacy laws.

I.

In 1998, defendant was employed by the Board as a clerk. For the first ten years of her employment, she was assigned to

4

the Board's payroll department.  In 2008, defendant was transferred to Lincoln School, where she was assigned to support the child study team, a group composed of professionals evaluating the individual needs of children with learning disabilities.  At some point during defendant's employment, her son, Jeffrey Saavedra, became a part-time employee of the Board.

The Board represents that its handling of student records to which defendant had access is governed by the federal Family Educational Rights and Privacy Act of 1974 (FERPA), 20 U.S.C.A. § 1232g, as well as the state pupil records statute, N.J.S.A. 18A:36-19, and implementing regulations codified at N.J.A.C. 6A:32-7.1 to -7.8.  The Board states that FERPA and its New Jersey counterpart impose strict confidentiality requirements barring disclosure of a broad range of student records, including records of services provided to students with disabilities.  Tracking the language of N.J.A.C. 6A:32-7.5(e)(7), the Board promulgated a privacy policy governing defendant and other support staff:

> Secretarial and clerical personnel under the direct supervision of certified school personnel shall be permitted access to those portions of [a pupil's record] to the extent that is necessary for the entry and recording of data and the conducting of routine clerical tasks.  Access shall be limited only to those pupil files which such staff are directed to enter or record information and shall cease when the specific assigned task is completed.

5

Further, the Board's Code of Ethics requires staff to "[k]eep the trust under which confidential information may be given," and to "[p]rotect and care for district property."  The State maintains that by virtue of the Board's internal policies, guidelines and regulations, Board employees including defendant were made aware that student records were highly confidential and that the disclosure of such records was strictly prohibited.

On November 25, 2009, defendant and her son filed an action in the Law Division against the Board and three individual defendants.  In their complaint, defendant and her son alleged that during the course of her employment, she had complained about the Board's alleged "violations of the law and public policy," including "[p]ay irregularities," improper administration of employee vacation and family leave, violations of unspecified "child study regulations" and "unsafe conditions" at a Board facility.[1]  The complaint included allegations that in

_____

[1] In particular, defendant alleged that the Board and the individual defendants denied her overtime; forced her to "repeatedly go into [] dusty and musty rooms which caused asthma attacks"; "[o]verload[ed]" her with work; denied her "paid time off to attend a volunteer DARE session"; "[v]erbally abus[ed] and harass[ed]" her; "[f]alsif[ied] work assignments"; refused to allow her to eat lunch with her son, Jeffrey; harassed her "regarding parking spaces"; "[f]alsif[ied] the dates on [her] weekly assignments"; "[f]orc[ed] [her] to clean the kitchen"; made her commence work early without overtime; denied her "vacation or change of vacation days"; gave her "adverse work assignments"; denied her the "flexibility afforded to other employees"; "[b]lam[ed] [her] for any mistakes in the office"; denied her the opportunity to take breaks; "[b]erated [her] for

6

retaliation for her complaints, and because of her race, ethnicity, national origin and gender, the Board and its employees denied benefits to defendant and her son, compelled them to work in an unsafe and hostile environment, and terminated the employment of defendant's son and his girlfriend. They premised their claims on the LAD, the Conscientious Employee Protection Act (CEPA), N.J.S.A. 34:19-1 to -8, the federal Civil Rights Act, 42 U.S.C.A. § 1983, the New Jersey Civil Rights Act, N.J.S.A. 10:6-1 to -2, the federal Fair Labor Standards Act of 1938, 29 U.S.C.A. §§ 201-19, the New Jersey State Wage and Hour Law, N.J.S.A. 34:11-56a to -56a38, the federal Family and Medical Leave Act, 29 U.S.C.A. §§ 2612-54, and the New Jersey Family Leave Act, N.J.S.A. 34:11B-1 to -16. They also asserted common law theories based on violations of public policy, conspiracy to violate civil rights, and intentional infliction of emotional distress. Defendant and her son sought compensatory and punitive damages, injunctive relief and attorneys' fees against the Board and the individuals.

---

taking vacation time to visit her ailing [mother] in the hospital"; did not allow Jeffrey to eat lunch in the kitchen; did not allow Jeffrey "to do night summer hours"; and "advised Jeffrey, when he attempted to explain his case, that they were calling the police to remove him." Defendant further alleges that one of the individual defendants "menac[ed] Jeffrey with her car."

It is undisputed that, without the Board's permission, defendant removed documents from the Board's office. The State contends that the documents consisted of three hundred and sixty-seven confidential student records. It alleges that in the case of sixty-nine of the documents, defendant did not photocopy documents and leave the files intact, but instead removed the original file copies from the premises. The record does not disclose the time period during which defendant collected the records.

By letter dated June 22, 2011, approximately a year and a half after defendant's employment discrimination complaint was filed, defendant's counsel in that matter provided copies of the confidential documents to the Board's counsel "in response to [the Board's] requests for all documents in [defendant's] possession which may include confidential and/or privileged information."[2] Counsel for the Board in the employment discrimination matter contacted Jack Gillman (Gillman), the attorney for the Special Services Division of the Board, and alerted him to defendant's production of the Board's documents in her civil case. Gillman then contacted the county prosecutor's office and notified it of the Board's allegation that defendant had taken confidential documents belonging to the

---

[2] The record does not reveal what prompted counsel for the Board to request that defendant's counsel produce the documents.

Board for use in her civil case.  The county prosecutor determined to pursue charges against defendant.

On April 24, 2012, the State presented evidence in defendant's case to a grand jury.  Gillman, the State's sole witness, testified about defendant's employment with the Board. He explained that the Board learned that defendant had confidential Board documents when the Board's attorney in defendant's civil lawsuit received certain documents in discovery and questioned Gillman about them.  Gillman stated that he told the Board's attorney that "the information in those documents was highly confidential, very sensitive, and we needed to act on that immediately."

Before the grand jury, Gillman specifically discussed five of the documents taken by defendant.  He identified one as a bank statement that revealed an account number and balance, which had been submitted by the parent of a student in order to prove the child's residency in North Bergen.  Gillman described a second document as an appointment schedule for the school psychiatrist that revealed the names of students being treated by the psychiatrist, and a reference to one student's medication.  He identified a third document taken by defendant as a consent form, signed by a student's parent, by which the parent agreed to the release of information to secure Medicaid reimbursement for special education services.  Gillman

9

identified two other documents as letters from parents of students receiving services and testified about the private information in the letters concerning the students, their families and the services that they received. With respect to each example, Gillman stated that defendant was not permitted to have the document outside the scope of her employment. Gillman generally described the Board policies barring employees from disclosing confidential documents, but the State did not present those policies in written form to the grand jury.

At the close of his examination of Gillman, the prosecutor asked the grand jurors whether they had questions for the witness. A grand juror asked, "[w]hen did she take out these documents? What's she going to do with them? The documents, what she do with them?" The prosecutor replied that he did not believe that Gillman could "speculate as to what [defendant] was going to do with the actual documents." Later in the proceeding, as the prosecutor discussed the elements of the offenses of official misconduct and theft, a grand juror interposed a question: "[w]hat -- I'm just curious. I thought I heard someone either say that she was going to sue the Board." The prosecutor replied, "[y]es, ma'am." The grand juror stated, "[b]ut how is that relevant -- or was she -- I was just wanting to see how it was --." Following an off-the-record discussion

10

among the grand jurors, the prosecutor stated, "I believe you answered your own question."

The grand jury returned a two-count indictment, charging defendant with second-degree official misconduct, N.J.S.A. 2C:30-2(a), and third-degree theft by unlawful taking of public documents, N.J.S.A. 2C:20-3(a) and N.J.S.A. 2C:20-2(b)(2)(g). On an unspecified date following her indictment, defendant voluntarily dismissed her employment discrimination action. On appeal, defendant's counsel represented that defendant dismissed the discrimination action because the attorney representing her in that action did not want to proceed with it.

Defendant moved to dismiss the indictment. She contended that her removal of documents from the Board's files for use in her employment discrimination claim was sanctioned by this Court's decision in Quinlan, and that a decision upholding the indictment would chill the pursuit of discrimination claims. The State argued that Quinlan was irrelevant to a criminal prosecution, that the indictment was not manifestly deficient or palpably defective, and that the State had not failed to present exculpatory evidence that squarely refuted an element of either of the charged offenses.

The trial court denied the motion to dismiss the indictment. It reasoned that defendant had served as a fiduciary for the public in her handling of student documents,

11

and that the State had presented a prima facie showing as to the elements of each offense. Although the trial court stated that it considered defendant's reliance on Quinlan to be misplaced, it nonetheless analyzed the indictment in accordance with the standard set forth in that decision and found that defendant's collection of the documents was not excused by that standard.

An Appellate Division panel granted defendant's motion for leave to appeal. The panel affirmed the trial court's denial of defendant's motion to dismiss the indictment. State v. Saavedra, 433 N.J. Super. 501, 507 (App. Div. 2013). It agreed with the trial court that the State presented sufficient evidence to the grand jury to establish a prima facie case with respect to the elements of official misconduct and theft. Id. at 507-08. The panel rejected plaintiff's argument that the State had an obligation to present exculpatory evidence regarding defendant's intent to use the documents in her civil suit, reasoning that evidence about that lawsuit would not be clearly exculpatory in the criminal case. Id. at 522-24. Noting that the disputed student records contained no "smoking gun" evidence against the Board, the Appellate Division panel stated that Board documents could have been obtained through normal discovery procedures. Id. at 526-27. The panel rejected defendant's argument that was premised on Quinlan, reasoning that the standard of Quinlan is limited to civil cases. Id. at

12

507-08, 516. It noted that defendant may assert, before the petit jury at trial, her claim that she had made an "honest error" and that she had a claim of right to the documents. Id. at 520-21.

One member of the Appellate Division panel dissented, reasoning that defendant's taking of the documents was protected activity under the LAD, CEPA, and Quinlan. Id. at 531 (Simonelli, J.A.D., dissenting). The dissenting judge opined that, as applied to this case, the official misconduct and theft statutes failed to put a reasonable person on notice that an employee's collection of documents from her employer for use in discrimination litigation could subject the employee to criminal prosecution, and that in light of Quinlan, defendant's indictment violated standards of fundamental fairness. Id. at 535-36.

We granted defendant's motion for leave to appeal. 217 N.J. 289 (2014). We also entered a stay of defendant's trial pending resolution of her appeal.

## II.

Defendant urges the Court to reverse the Appellate Division panel's judgment and dismiss the indictment. Defendant argues that the State failed to present a prima facie case to the grand jury. She contends that the panel's decision contravenes the anti-discrimination policies of the LAD, CEPA, and the Court's

13

decision in Quinlan, and that it authorizes employers to circumvent the Quinlan balancing test by reporting an employee's collection of documents as a theft to a prosecutor. Finally, defendant asserts that the official misconduct and theft statutes are constitutionally infirm as applied to her case because they violate due process and fundamental fairness standards, and because they are too vague to give a reasonable person notice as to the conduct that the laws prohibit.

The State argues that the Appellate Division panel properly resolved the issues before it. Noting that defendant does not challenge the adequacy of the evidence presented to the grand jury on the charge of theft, the State contends that it presented sufficient evidence to support the grand jury's return of an indictment on both charges. It asserts that the balancing test of Quinlan is inapplicable to criminal cases and that even under that test, defendant has failed to demonstrate that the documents taken were relevant to her civil case. The State disputes defendant's contention that the official misconduct and theft statutes violate fundamental fairness and vagueness standards as applied to this case, arguing that it is not inherently unfair to prosecute a public employee for the wholesale removal of confidential documents from her employer's files, and that a person of ordinary intelligence is on notice that such conduct is unlawful.

14

Amicus curiae National Employment Lawyers Association/New Jersey (NELA) argues that the Appellate Division's decision has a chilling effect on whistleblowers, as well as their attorneys, who could be exposed to charges of receiving stolen property. NELA contends that the panel's decision undermines the policies of the LAD and CEPA. It argues that the official misconduct and theft by unlawful taking statutes violate due process norms and are unconstitutionally vague.

Appearing as amicus curiae, the Board supports the State's argument that Quinlan is irrelevant to this case. It characterizes the records at issue in this case as uniquely entitled to protection from theft, by virtue of the strict confidentiality provisions of FERPA and its New Jersey counterpart. The Board argues that defendant violated its internal confidentiality policies, which restrict employees' access to and use of student records.

Amicus curiae New Jersey School Boards Association (NJSBA) similarly relies on the special status of student records under FERPA and analogous state laws. NJSBA submits that federal and state laws protect the privacy of students provided with services under the Individuals with Disabilities Education Act. See 20 U.S.C.A. § 1417(c). NJSBA identifies sensitive information that is included in student records, particularly the records of students receiving special services, and argues

15

that the removal of such records from the Board's files imperiled federal funding on which the North Bergen schools rely.

Amicus curiae Attorney General of New Jersey addresses defendant's constitutional arguments. The Attorney General contends that New Jersey's official misconduct and theft statutes are not unconstitutionally vague and that the LAD, CEPA, and this Court's decision in Quinlan do not justify or condone the appropriation of employer documents for use in anti-discrimination litigation. The Attorney General argues that, at most, Quinlan may provide to defendant a claim of right or other justification defense at trial.

### III.

The trial court's decision denying defendant's motion to dismiss her indictment is reviewed for abuse of discretion. State v. Hogan, 144 N.J. 216, 229 (1996) (citing State v. Weleck, 10 N.J. 355, 364 (1952)). "A trial court's exercise of this discretionary power will not be disturbed on appeal 'unless it has been clearly abused.'" State v. Warmbrun, 277 N.J. Super. 51, 60 (App. Div. 1994) (quoting Weleck, supra, 10 N.J. at 364), certif. denied, 140 N.J. 277 (1995). Accordingly, we first consider whether the trial court properly exercised its discretion when it held that the State presented a prima facie showing on the elements of the official misconduct and theft

16

offenses charged and that the State did not withhold from the grand jury exculpatory evidence that it had a duty to present.

A.

The grand jury determination under review serves a crucial function in our criminal justice system.  The New Jersey Constitution guarantees that a defendant will not be compelled to stand trial unless the State has presented the matter to a grand jury and the grand jury has returned an indictment.  State v. Morrison, 188 N.J. 2, 12 (2006) (citing N.J. Const. art. I, ¶ 8)).  The grand jury "is an accusative rather than an adjudicative body," whose task is to "'assess whether there is adequate basis for bringing a criminal charge.'"  Hogan, supra, 144 N.J. at 229-30 (quoting United States v. Williams, 504 U.S. 36, 51, 112 S. Ct. 1735, 1744, 118 L. Ed 2d 352, 368 (1992)).  "To fulfill its 'constitutional role of standing between citizens and the State,' the grand jury is asked to determine whether 'a basis exists for subjecting the accused to a trial.'"  Id. at 227 (quoting State v. Del Fino, 100 N.J. 154, 164 (1985); Trap Rock Indus., Inc. v. Kohl, 59 N.J. 471, 487 (1971), cert. denied, 405 U.S. 1065, 92 S. Ct. 1500, 31 L. Ed. 2d 796 (1972)).  "The absence of any evidence to support the charges would render the indictment 'palpably defective' and subject to dismissal."  Morrison, supra, 188 N.J. at 12 (citing Hogan, supra, 144 N.J. at 228-29).

17

A trial court deciding a motion to dismiss an indictment determines "whether, viewing the evidence and the rational inferences drawn from that evidence in the light most favorable to the State, a grand jury could reasonably believe that a crime occurred and that the defendant committed it." Id. at 13 (citing State v. Reyes, 50 N.J. 454, 459 (1967)). A court "should not disturb an indictment if there is some evidence establishing each element of the crime to make out a prima facie case." Id. at 12 (citing Hogan, supra, 144 N.J. at 236; State v. Vasky, 218 N.J. Super. 487, 491 (App. Div. 1987)).

Our inquiry in this appeal is thus a narrow one. With the evidence and the rational inferences from that evidence viewed in the light most favorable to the State, we determine whether the trial court abused its discretion when it found that the State presented evidence sufficient to establish a prima facie case on the elements of the relevant offenses, and that it did not withhold exculpatory evidence from the grand jury or fail to present to the grand jury a defense of justification that should have been presented.

### B.

The first offense for which defendant was indicted is official misconduct. N.J.S.A. 2C:30-2. The statute provides:

> A public servant is guilty of official
> misconduct when, with purpose to obtain a

> benefit for himself or another or to injure or to deprive another of a benefit:
>
>> a. He commits an act relating to his office but constituting an unauthorized exercise of his official functions, knowing that such act is unauthorized or he is committing such act in an unauthorized manner; or
>>
>> b. He knowingly refrains from performing a duty which is imposed upon him by law or is clearly inherent in the nature of his office.
>
> [N.J.S.A. 2C:30-2.]

New Jersey's official misconduct statute, enacted as part of the Code of Criminal Justice (Code) in 1979, is based on a New York statute, and was intended "'to consolidate the law as to malfeasance [subsection (a)] and non-feasance [subsection (b)] by public servants.'" State v. Hinds, 143 N.J. 540, 545 (1996) (quoting Cannel, New Jersey Criminal Code Annotated, comment 1 on N.J.S.A. 2C:30-2 (1996-1997)).

The State alleged before the grand jury that defendant violated subsection (a) of the official misconduct statute. N.J.S.A. 2C:30-2(a).[3] To establish a prima facie case with respect to that offense, the State was required to present

---

[3] Official misconduct is a second-degree crime unless the value of the benefit obtained or deprived is "$200 or less," in which case it is a third-degree crime. N.J.S.A. 2C:30-2; State v. Phelps, 187 N.J. Super. 364, 373 (App. Div. 1983), aff'd, 96 N.J. 500 (1984). Defendant was indicted for official misconduct in the second degree.

19

evidence that: (1) defendant was a "public servant" within the meaning of the statute (2) who, with the purpose to obtain a benefit or deprive another of a benefit, (3) committed an act relating to but constituting an unauthorized exercise of her office, (4) knowing that such act was unauthorized or that she was committing such act in an unauthorized manner. State v. Thompson, 402 N.J. Super. 177, 191-92 (App. Div. 2008) (citing State v. Bullock, 136 N.J. 149, 153 (1994); State v. Schenkolewski, 301 N.J. Super. 115, 143 (App. Div.), certif. denied, 151 N.J. 77 (1997)); see also Hinds, supra, 143 N.J. at 545 (observing commentary of New Jersey Criminal Law Revision Commission as to elements of subsection (a) (quoting Cannel, supra, comment 2 to N.J.S.A. 2C:30-2)).

The Legislature broadly defined a "public servant" as "any officer or employee of government, including legislators and judges, and any person participating as juror, advisor, consultant or otherwise, in performing a governmental function, but the term does not include witnesses." N.J.S.A. 2C:27-1(g). Construing that expansive statutory language, our courts have applied N.J.S.A. 2C:30-2 to defendants serving in a range of official roles, including administrative positions. See, e.g., State v. Perez, 185 N.J. 204, 205-07 (2005) (holding head clerk at motor vehicle agency is "public servant" notwithstanding her employer's status as private company managing agency under

20

contract with State); Bullock, supra, 136 N.J. at 156 (holding police officer who was suspended from duty is "public servant"); State v. Parker, 124 N.J. 628, 641 (1991) (holding teacher is "public servant"); State v. Quezada, 402 N.J. Super. 277, 283-84 (App. Div. 2008) (finding that volunteer firefighter is "public servant" in setting of case).

With respect to that first element of the offense of official misconduct under N.J.S.A. 2C:30-2(a), the State presented evidence of defendant's employment by the Board as a clerk, first in the payroll department and then supporting the Special Services Division of the Board. Defendant does not dispute that she is an "officer or employee of government" as defined in N.J.S.A. 2C:27-1(g). She argues, instead, that only employees who exercise public authority should be subject to prosecution for official misconduct. However, neither the statutory text nor our case law supports this narrow view of the "public servant" element of the offense. See N.J.S.A. 2C:30-2(a); N.J.S.A. 2C:27-1(g); Perez, supra, 185 N.J. at 206 (noting broad definition of "public servant" in official misconduct statute); see also Quezada, supra, 402 N.J. Super. at 283-84 (finding element proven when defendant served governmental function). In this case, the State presented to the grand jury a prima facie showing with respect to the first element of the offense of official misconduct.

Next, the State had the burden to present to the grand jury a prima facie showing that defendant acted "with purpose to obtain a benefit for himself or another or to injure or deprive another of a benefit" as an element of an official misconduct offense under N.J.S.A. 2C:30-2. The Legislature defined a "benefit" as "gain or advantage, or anything regarded by the beneficiary as gain or advantage." N.J.S.A. 2C:27-1(a). That definition includes pecuniary benefit, defined as a "benefit in the form of money, property, commercial interests or anything else the primary significance of which is economic gain." N.J.S.A. 2C:27-1(f). It has also been held to encompass a variety of non-pecuniary benefits. See, e.g., Parker, supra, 124 N.J. at 641 (holding defendant's personal gratification derived from exposing students to sexually explicit material and discussion is benefit); State v. Stevens, 115 N.J. 289, 306-07 (1989) (holding illegal strip search to satisfy sexual desire is benefit); Quezada, supra, 402 N.J. Super. at 285 (holding "joy of responding to fires as a volunteer firefighter" is benefit).

Before the grand jury, the State presented evidence that defendant removed documents from the Board's files in order to use them in her discrimination litigation against the Board. Gillman testified that some of the documents removed from the Board's files were its originals and that the Board was potentially exposed to sanctions under federal and state privacy

laws by virtue of her conduct.  Defendant contends that the purpose of her conduct was nothing more than to proceed with her lawsuit and that the State presented no evidence that she actually derived a financial benefit or personal gratification from her conduct.

The official misconduct statute does not require that the defendant actually gain a benefit.  It merely requires that he or she act "with purpose to obtain a benefit for himself" or herself, whether or not that purpose was ultimately achieved. See N.J.S.A. 2C:30-2; see also ibid. (referring in grading provision to "benefit obtained or sought to be obtained").  If, as the State and defendant agree, defendant took her employer's documents for use in her employment discrimination claims, the trial court properly concluded that she acted with a "purpose" to "obtain a benefit" for herself.  Ibid.  Thus, considering the evidence and the rational inferences from that evidence in the light most favorable to the State, the State has presented a prima facie showing with respect to the second element of official misconduct.

Third, the State was required to present prima facie evidence that the defendant has committed "an act relating to [her] office but constituting an unauthorized exercise of [her] official functions."  N.J.S.A. 2C:30-2(a).  That standard distinguishes between conduct that relates to the public

23

servant's office and a public servant's purely private misconduct. See Hinds, supra, 143 N.J. at 549 (observing "not every offense committed by a public official involves official misconduct"). For example, this Court has noted that an act "sufficiently relates" to law enforcement officers' public office when they "commit an act of malfeasance because of the office they hold or because of the opportunity afforded by that office . . . ." Bullock, supra, 136 N.J. at 157; see also State v. Kueny, 411 N.J. Super. 392, 407-08 (App. Div. 2010) (holding "misconduct must somehow relate to the wrongdoer's public office" and off-duty officer's illegal use of another's ATM card "does not constitute misconduct in office").

Addressing that element, Gillman testified that the documents taken originated in the Board's files and were obtained by defendant through her employment. He also told the grand jury that the documents contained highly confidential and private information about students, that defendant was not given permission to have them in her personal possession, and that defendant's conduct violated the Board's confidentiality policies. That testimony gave rise to a prima facie showing that defendant's conduct directly related to her public employment, and that the manner in which she allegedly handled the Board's documents was unauthorized by her employer.

Finally, the State was required to present a prima facie showing that defendant knew "that such act [was] unauthorized or [she was] committing such act in an unauthorized way." N.J.S.A. 2C:30-2(a). As this Court noted, the New Jersey Criminal Law Revision Commission envisioned that "'the public servant must know that such act is unauthorized . . . because it is declared to be such by statute, ordinance, rule, regulation or otherwise.'" Hinds, supra, 143 N.J. at 545 (quoting Cannel, supra, comment 2 on N.J.S.A. 2C:30-2). In that regard, Gillman testified that by virtue of the Board's internal confidentiality policies, employees are trained and informed that the documents at issue are highly confidential and must not be tampered with. His testimony and the rational inferences from that testimony, viewed in the light most favorable to the State, serves as a prima facie showing on this final element of the offense of official misconduct. Thus, the State met its burden to present prima facie evidence on all four of the elements of official misconduct in violation of N.J.S.A. 2C:30-2(a).

N.J.S.A. 2C:20-3(a) defines the second offense in the indictment returned by the grand jury, theft by unlawful taking of movable property: "A person is guilty of theft if he unlawfully takes, or exercises unlawful control over, movable property of another with purpose to deprive him thereof."

25

The offense of theft "constitutes a crime of the third degree if . . . [i]t is of a public record, writing or instrument kept, filed or deposited according to law with or in the keeping of any public office or public servant." N.J.S.A. 2C:20-2(b)(2)(g). Pursuant to that provision, defendant was indicted for theft in the third degree.

Gillman testified that defendant collected several hundred confidential records from her employer, in contravention of the employer's policy. The State, therefore, presented a prima facie case regarding the element of the offense that defendant "unlawfully takes, or exercises unlawful control over, movable property of another." N.J.S.A. 2C:20-3(a). Moreover, Gillman told the grand jury that a significant portion of those documents were the Board's "original" copies. Gillman explained that some of the documents that he characterized as "originals" bore "an ink signature," and others were photocopies that served as the Board's sole file copy, the removal of which left the Board without the document in its files. Thus, the State presented prima facie evidence that defendant took the documents "with purpose to deprive" the Board of them. Finally, the State presented evidence that the documents constituted "public record[s], writing[s] or instrument[s] kept . . . according to law with or in the keeping of any public office or public

26

servant," thus satisfying the "public record" element of N.J.S.A. 2C:20-3 for the third-degree offense.

Accordingly, we concur with the trial court and the Appellate Division that the State met its burden of presenting a prima facie case with respect to each element of both offenses for which the grand jury indicted defendant.

C.

We also consider whether the trial court abused its discretion when it decided that the State did not withhold from the grand jury clearly exculpatory evidence that would negate defendant's guilt as to one or both offenses, see Hogan, supra, 144 N.J. at 237, and whether the State properly did not charge the grand jury as to a defense, see State v. John Hogan, 336 N.J. Super. 319, 341-42 (App. Div.), certif. denied, 167 N.J. 635 (2001).

The prosecutor's duty to present exculpatory evidence to a grand jury is very closely circumscribed. The State is required to present such evidence "in the rare case in which . . . evidence . . . both directly negates the guilt of the accused and is clearly exculpatory;" the evidence must "squarely refute[] an element of the crime." Hogan, supra, 144 N.J. at 237 (emphasis in original). "[T]he prosecutor need not construct a case for the accused or search for evidence that would exculpate the accused." Id. at 238. It is "[o]nly when

27

the prosecuting attorney has actual knowledge of clearly exculpatory evidence that directly negates guilt must such evidence be presented to the grand jury." Ibid. As the Court observed:

> Ascertaining the exculpatory value of evidence at such an early stage of the proceedings can be difficult, see, e.g., Wayne R. L[a]Fave and Jerold H. Israel, Criminal Procedure § 15.4(d), at 318 (1984), and courts should act with substantial caution before concluding that a prosecutor's decision in that regard was erroneous. We emphasize that only in the exceptional case will a prosecutor's failure to present exculpatory evidence to a grand jury constitute grounds for challenging an indictment.
>
> [Id. at 238-39.]

In this case, defendant contends that the State improperly withheld from the grand jury evidence that she collected her employer's documents for purposes of her employment discrimination case. Although defendant's civil litigation was not emphasized in the presentation to the grand jury, Gillman testified that defendant had an "outstanding" lawsuit against the Board, and that he learned about the disputed documents after they were provided by defendant's attorney to the Board's counsel in that lawsuit. The prosecutor had no obligation to suggest to the grand jury that defendant thought that because she maintained an employment discrimination claim, her conduct

28

was sanctioned by law.[4]  Neither official misconduct nor theft by unlawful taking includes an element that would be "squarely refuted" by proof that defendant intended to use the documents to support her employment discrimination claim.  This is not the "exceptional" case in which clearly exculpatory evidence was known to the prosecutor and improperly withheld.  See Hogan, 144 N.J. at 238-39.

Our dissenting colleague concurs with our conclusion that the prosecutor did not withhold exculpatory evidence in violation of Hogan, supra, 144 N.J. at 238-39, but contends instead that "[b]y suppressing a grand juror's legitimate questions and rationing the evidence, the prosecutor allowed a distorted picture of Saavedra's motives."  Post at ___ (slip op. at 6).  We agree with the Appellate Division that the grand jury was not misled by the prosecutor's response to one juror's inquiry about defendant's employment discrimination case.  The prosecutor did not block the grand juror's questions, but cautioned his witness, who had already provided the grand jury with the limited information available to him about the nexus

---

[4] Although defendant cited Quinlan in her motion to dismiss her indictment before the trial court and on appeal, the record contains no assertion on her behalf that when she took the documents from her employer, she understood Quinlan to authorize her conduct.  Indeed, it is unclear whether defendant collected the documents from the Board before or after this Court decided Quinlan.

29

between the documents and defendant's lawsuit, from speculating about defendant's motive.

The grand juror's initial questions -- when defendant took the documents, and what she was going to do with them -- were posed to the State's sole witness, Board attorney Gillman. There is no indication that Gillman had information about the timing of defendant's removal of the documents, the subject of the first question. As to the grand juror's second question -- what defendant intended to do with the documents -- the grand jury was directly informed about the relationship between defendant's litigation and the documents at issue. When the grand juror asked his or her question, Gillman had already testified that defendant had sued the Board, and that "there is a lawsuit outstanding." Gilman added that he learned about the documents after they were produced to the Board's counsel in the discovery phase of defendant's lawsuit. Indeed, a subsequent question by a grand juror, who noted the testimony that defendant had sued the Board and asked how that testimony was relevant, confirms that juror's awareness that defendant had a civil claim. In short, contrary to the dissent's contention, the nexus between defendant's civil litigation and the documents was disclosed to the grand jury.

It would have been the better practice for the prosecutor to direct Gillman to reiterate his testimony that the documents

30

had been produced in defendant's employment discrimination action in order to emphasize the connection between the documents and defendant's lawsuit. However, the prosecutor was correct to caution Gillman not to speculate on defendant's intent. We cannot conclude on this record that the State's handling of the grand juror's inquiry was misleading or otherwise improper.

Moreover, contrary to the contention of our dissenting colleague, the State was not obligated to charge the grand jury regarding the legal standard that governed a potential defense based on justification. The Appellate Division, in John Hogan, supra, correctly observed that "a prosecutor's obligation to instruct the grand jury on possible defenses is a corollary to his responsibility to present exculpatory evidence." 336 N.J. Super. at 341. However, the panel further opined:

> By its very nature, the grand jury does not consider a full and complete adversarial presentation, "and the instructions are not made after consideration [and with the benefit] of the views of the defense." State v. Schmidt, 213 N.J. Super. 576, 584 (App. Div. 1986), rev'd on other grounds, 110 N.J. 258 (1988). We do not believe that the prosecutor has the obligation on his own meticulously to sift through the entire record of investigative files to see if some combination of facts and inferences might rationally sustain a defense of justification. Cf. State v. Choice, 98 N.J. 295, 299 (1985).
>
> [Id. at 343 (alterations in original).]

31

Consequently, "it is only when the facts known to the prosecutor clearly indicate or clearly establish the appropriateness of an instruction that the duty of the prosecution arises."  Id. at 343-44 (citing Choice, supra, 98 N.J. at 299; State v. Bell, 589 P.2d 517, 518 (Haw. 1978), rev'd on other grounds, State v. Chong, 949 P.2d 122 (Haw. 1997)); see also Pressler & Verniero, Current N.J. Court Rules, comment 3.4.2. to R. 3:10-2 (2015).

The principle stated by the Appellate Division in John Hogan applies here.  In her motion to dismiss the indictment, defendant presented no facts that clearly warranted an instruction on the issue of justification.  She argued only that she removed the documents for a lawful use sanctioned by Quinlan -- the prosecution of her civil lawsuit.  There is nothing in the record of the grand jury proceeding, or in the record before this Court, that suggests that defendant was motivated by Quinlan when she took the Board's documents from its premises.  Indeed, it is unclear that Quinlan had even been decided when defendant's alleged misconduct took place.  Moreover, notwithstanding the fact that defendant's lawsuit was focused on her compensation and working conditions, she allegedly removed confidential student records from the Board's files.  The prosecutor had no duty to present to the grand jury a charge of justification based on Quinlan.

32

In sum, we agree with the Appellate Division that the trial court did not abuse its discretion when it concluded that the State met its burden in the presentation of evidence to the grand jury, that the State did not withhold clearly exculpatory evidence from the grand jury, and that the State did not fail to charge the grand jury as to a justification defense.

IV.

We next consider defendant's constitutional and public policy arguments. Defendant contends that the trial court's denial of her motion to dismiss her indictment violates principles of due process in two respects: her prosecution contravenes the doctrine of fundamental fairness, and as applied to her case, the official misconduct and theft by unlawful taking statutes are unconstitutionally vague. Defendant also contends that her indictment should be dismissed as inconsistent with New Jersey's public policy against employment discrimination.

A.

The doctrine of fundamental fairness "'serves to protect citizens generally against unjust and arbitrary governmental action, and specifically against governmental procedures that tend to operate arbitrarily.'" Doe v. Poritz, 142 N.J. 1, 108 (1995) (emphasis in original) (quoting State v. Ramseur, 106 N.J. 123, 377 (1987) (Handler, J., dissenting)). This Court has

33

described this doctrine as "'an integral part of due process'" that "'is often extrapolated from or implied in other constitutional guarantees.'" State v. Miller, 216 N.J. 40, 71 (2013) (quoting Oberhand v. Dir., Div. of Taxation, 193 N.J. 558, 578 (2008)); see also State v. Abbati, 99 N.J. 418, 429 (1985) (explaining underpinnings of doctrine).

The doctrine is applied "'sparingly'" and only where the "interests involved are especially compelling"; if a defendant would be subject "'to oppression, harassment, or egregious deprivation,'" it is be applied. Doe, supra, 142 N.J. at 108 (quoting State v. Yoskowitz, 116 N.J. 679, 712 (1989) (Garibaldi, J., concurring and dissenting)). It can be applied "at various stages of the criminal justice process even when such procedures were not constitutionally compelled." Ibid. (citations omitted).[5] The doctrine's "primary considerations should be fairness and fulfillment of reasonable expectations in the light of the constitutional and common law goals."

---

[5] Our courts have occasionally applied the doctrine of fundamental fairness to dismiss an indictment, typically in settings in which the indictment follows multiple mistrials or the State attempts to prosecute a defendant several times for the same conduct. See, e.g., Abbati, supra, 99 N.J. at 435; State v. Simmons, 331 N.J. Super. 512, 522-24 (App. Div. 2000); State v. Dunns, 266 N.J. Super. 349, 378-79 (App. Div.), certif. denied, 134 N.J. 567 (1993).

Yoskowitz, supra, 116 N.J. at 706 (emphasis omitted) (quoting State v. Currie, 41 N.J. 531, 539 (1964)).

Defendant's as-applied vagueness challenge to the official misconduct and theft by unlawful taking statutes requires the Court to determine whether either statute fails "to give [defendant] 'fair warning' that his or her conduct is prohibited." Jenkins v. N.J. Dep't of Corr., 412 N.J. Super. 243, 257 (App. Div. 2010); see also State v. Lisa, 391 N.J. Super. 556, 578 (App. Div. 2007), aff'd, 194 N.J. 409, 412 (2008). "Vagueness 'is essentially a procedural due process concept grounded in notions of fair play." State v. Lee, 96 N.J. 156, 165 (1984) (quoting State v. Lashinsky, 81 N.J. 1, 17 (1979)). Here, relying on the opinion of the dissenting Appellate Division judge, defendant argues that, although the official misconduct and theft by unlawful taking statutes are constitutionally precise in other settings, those statutes are impermissibly vague in her case because they conflict with the anti-discrimination policies promoted by Quinlan. See Saavedra, supra, 433 N.J. Super. at 536-37 (Simonelli, J., dissenting).

Defendant's public policy argument substantially restates her constitutional contentions. She contends that her indictment should be dismissed as a matter of public policy because in Quinlan, this Court "legalized the right of employees to take confidential documents as a protective measure under the

Law Against Discrimination." She and NELA argue that her prosecution chills the assertion of LAD and CEPA claims.

Defendant's constitutional and policy arguments are thus founded upon her interpretation of this Court's decision in Quinlan. To defendant, Quinlan stands for the proposition that an employee has a legally recognized right to take confidential employer documents for use in employment discrimination litigation, and, accordingly, criminal prosecution for that act is barred by due process principles and public policy.

B.

Given her invocation of her employment discrimination lawsuit and this Court's opinion in Quinlan in support of her constitutional and public policy arguments, defendant's civil lawsuit is a pivotal issue in her criminal appeal.

Had she chosen to invoke it, the discovery process prescribed by our court rules would have afforded to defendant a fair opportunity to seek documents in support of her case. In her employment discrimination litigation, defendant was permitted "discovery regarding any matter, not privileged, which is relevant to the subject matter involved in [her] pending action, whether it relates to the claim or defense of the party seeking discovery or to the claim or defense of any other party." R. 4:10-2(a). That rule exists to "advance 'the public policies of expeditious handling of cases, avoid[] stale

36

evidence, and provid[e] uniformity, predictability and security in the conduct of litigation.'" Pressler & Verniero, supra, comment 1 on R. 4:10-2 (quoting Zaccardi v. Becker, 88 N.J. 245, 252 (1982)).

Even before filing her complaint, defendant had the right to file a verified petition seeking to "preserve any evidence or to inspect documents or property or copy documents pursuant to [Rule] 4:18-1"; upon an appropriate showing, a court order could have been entered compelling the Board to preserve evidence. R. 4:11-1(a), (c); see Gilleski v. Cmty. Med. Ctr., 336 N.J. Super. 646, 655 (App. Div. 2001) (holding "any person desiring to preserve evidence prior to institution of an action may seek such relief by verified petition pursuant to [Rule] 4:11-1(a)"). The rule is "intended for cases in which there exist[s] a genuine risk that testimony w[ill] be lost or evidence destroyed before suit c[an] be filed and in which an obstacle beyond the litigant's control prevents suit from being filed immediately." In re Hall ex rel. Hall, 147 N.J. 379, 385 (1997). Accordingly, had defendant been able to substantiate her contention that the Board might discard or destroy evidence before she filed suit, she could have obtained relief on an emergent basis.

After her complaint was filed, defendant had access to such discovery methods as demands for the production of documents, R. 4:18-1, interrogatories, R. 4:17-1 to -8, and deposition notices

37

served upon organizations, R. 4:14-2, among many others. Had defendant's requests for discovery been unreasonably opposed, she could have filed motions to compel discovery, obtain court-ordered production of documents and impose sanctions. See R. 4:23-1, -2, -5. In the event that a party is found to have committed spoliation of evidence, a range of sanctions is available under both our common law and Court Rules. See Jerista v. Murray, 185 N.J. 175, 201-02 (2005); see also Pressler & Verniero, supra, comment 3 on R. 4:23-2 (explaining range of consequences for spoliation including discovery sanctions under Rule 4:23-2(b)).

Had defendant sought the documents at issue pursuant to our court rules, the Law Division judge handling her application would have been in a position to make two important determinations. First, the judge could have reviewed the discovery sought against the backdrop of the statutory and common law claims that defendant asserted and ascertained the relevance of that discovery to defendant's case. With a full record, which is unavailable on this appeal, the judge could have assessed the relevance of documents from the Board's student files to defendant's claims.

Second, student privacy concerns raised by the disclosure of the documents could have been addressed by a trial judge equipped to impose a range of available remedies. If, as the

38

Board and NJSBA contend, the disclosure of the records at issue implicated the individual privacy rights of students and parents, violating federal and state privacy laws and imperiling the North Bergen schools' federal funding, the Law Division judge could have addressed those issues. The judge could have denied the proposed discovery, limited that discovery by redaction of private information, or imposed a protective order restricting access to the documents. See R. 4:10-2, -3.

Thus, our court rules provided defendant the opportunity to obtain from the Board relevant documents in support of her civil claim, subject to procedural safeguards and judicial oversight.

C.

This Court's decision in Quinlan did not endorse self-help as an alternative to the legal process in employment discrimination litigation. Nor did Quinlan bar prosecutions arising from an employee's removal of documents from an employer's files for use in a discrimination case, or otherwise address any issue of criminal law. Instead, the Court analyzed one aspect of the substantive legal standard governing LAD retaliation claims under N.J.S.A. 10:5-12(d): whether an employee's conduct in taking documents from his or her employer for use in a discrimination claim -- and in using those documents in pursuit of that claim -- is protected activity for purposes of the employee's claim when the employer takes adverse

39

employment action against the employee.  See Quinlan, supra, 204 N.J. at 267-69.

Quinlan arose from a discrimination claim asserted by a human resources executive, who contended that her employer discriminated against her on the basis of her gender.  Id. at 246-49.  Without advising her attorney and in an alleged violation of the employer's confidentiality policy, the plaintiff-employee reviewed and copied files, some containing other employees' personal and financial information.  Id. at 246-48.[6]  Most of the documents were eventually produced in discovery to the defendant employer.  Id. at 248.  Thereafter, the plaintiff-employee copied and supplied to her attorneys her supervisor's performance evaluation, and her counsel used that evaluation at the deposition of the supervisor.  Ibid.

Quinlan's employer terminated her employment, and she amended her complaint to assert a retaliation claim under the LAD.  Id. at 248-49.  The trial court held that Quinlan could recover on her LAD retaliation claims if her employment was terminated because her counsel used the performance evaluation to prosecute her lawsuit, and a jury returned a verdict in her

---

[6] The Court's opinion in Quinlan cites no evidence that the plaintiff in that case removed her employer's original file documents.  The documents taken by the plaintiff in that case were apparently photocopied, and the originals remained on the employer's premises.  Id. at 248-49.

favor.  Id. at 250-51.  The Appellate Division reversed and remanded for a new trial.  Id. at 255.

This Court reversed the judgment of the Appellate Division. The majority premised its holding on a portion of the LAD's anti-retaliation provision, which prohibits retaliation against a plaintiff because he or she "has . . . assisted in any proceeding" under the LAD.  Id. at 258-60 (citing N.J.S.A. 10:5-12(d)).  It acknowledged an employee's duty to safeguard confidential information that he or she gains through the employment relationship and to refrain from sharing that information with third parties.  Id. at 260-61.  It held, however, that the employer's interest must be balanced against the employee's right to be free from unlawful discrimination. Id. at 261.

In so holding, the Court expanded upon the standard set forth by a federal Court of Appeals applying Title VII, 42 U.S.C.A. § 2000e-3(a), in Niswander v. Cincinnati Ins. Co., 529 F.3d 714, 719-20 (6th Cir. 2008).  Quinlan, supra, 204 N.J. at 267-71.  It adopted "a flexible, totality of the circumstances approach" for courts to consider in assessing an employee's conduct for purposes of his or her LAD retaliation claim.  Id. at 269.  Under that standard, a court evaluates a number of factors:  how the employee gained "possession of, or access to, the document"; "what the employee did with the document"; "the

41

nature and content of the particular document"; whether the employee violated "a clearly identified company policy on privacy or confidentiality"; "the circumstances relating to the disclosure of the document"; "the strength of the employee's expressed reason for copying the document"; the broad remedial purposes of our laws against discrimination; and "the effect, if any, that either protecting the document or permitting it to be used will have upon the balance of employers' and employees' legitimate rights."  Id. at 269-71.

The Court acknowledged employers' concerns that by virtue of its holding, "employers will be powerless to discipline employees who take documents when they are not privileged to do so."  Id. at 272.  Dismissing those concerns, the Court cautioned:

> On the contrary, employees may still be disciplined for that behavior and even under the best of circumstances, run the significant risk that the conduct in which they engage will not be found by a court to fall within the protection our test creates. The risk of self-help is high and the risk that a jury will reject a plaintiff's argument that he or she was fired for using the document, rather than for finding it and taking it in the first place, will serve as an important limitation upon any realization of the fears that the employers have expressed to the Court.
>
> [Ibid.]

42

The Court reinstated Quinlan's LAD retaliation verdict, and further held that the jury's award of punitive damages was supported by the evidence. Id. at 273-75.

Thus, the balancing test of Quinlan may be an important measure in cases involving the retaliation provision of the LAD, N.J.S.A. 10:5-12(d), when the employee's conduct in taking or using confidential documents allegedly provoked the employer to take retaliatory action. Id. at 269. The Court never suggested, however, that its ruling in Quinlan extends to any question of criminal law. It expressly recognized that "employers legitimately expect[] that they will not be required to tolerate acts amounting to self-help or thievery." Id. at 245-46. In short, nothing in Quinlan states or implies that the anti-discrimination policy of the LAD immunizes from prosecution an employee who takes his or her employer's documents for use in a discrimination case.

Accordingly, the fundamental fairness doctrine, premised upon the reasonable expectations of those who are subject to the law with respect to the legality of their conduct, cannot render the official misconduct and theft by unlawful taking statutes unconstitutional as applied to defendant. Nor are those laws unconstitutionally vague as they pertain to defendant. Each statute defines the conduct that it proscribes and provides ample notice of its terms. We concur with the Appellate

43

Division majority that, as applied in this case, the official misconduct and theft by unlawful taking statutes meet due process standards.

Finally, defendant's indictment is not defective on the ground that it violates public policy. New Jersey has long-expressed a strong public policy against discrimination. Lehmann v. Toys 'R' Us, Inc., 132 N.J. 587, 600 (1993) (citing Fuchilla v. Layman, 109 N.J. 319, 335, cert. denied, 488 U.S. 826, 109 S. Ct. 75, 102 L. Ed. 2d 51 (1988)). That policy is reflected in the Legislature's recognition of the causes of action codified in the LAD and CEPA. N.J.S.A. 10:5-12; N.J.S.A. 34:19-3; see also Battaglia v. United Parcel Serv., Inc., 214 N.J. 518, 549, 555 (2013) (noting both LAD and CEPA promote strong state public policies).

In the setting of civil litigation, New Jersey's anti-discrimination policy is promoted by the assertion of statutory and common law anti-discrimination claims, by the vigorous pursuit of relevant information in discovery, and by the presentation of evidence at trial. To date, the Legislature has not determined that in order to effect the State's anti-discrimination policy, employment discrimination litigants should be immunized from prosecution for surreptitiously taking employer documents to support their claims. Such litigants remain subject to our criminal laws.

44

Accordingly, no constitutional argument or consideration of public policy compels the dismissal of defendant's indictment. The trial court did not abuse its discretion when it declined to dismiss the indictment on those grounds.

IV.

Notwithstanding the inapplicability of Quinlan to criminal proceedings, defendant may assert that her intent to use the documents at issue in support of her employment discrimination claim gives rise to a "claim of right" defense or other justification, if the evidence at trial supports such an assertion.

Our Code recognizes justification as an affirmative defense "[i]n any prosecution based on conduct which is justifiable under this chapter." N.J.S.A. 2C:3-1(a). N.J.S.A. 2C:3-2(b) generally addresses the defenses based on justification:

> Conduct which would otherwise be an offense is justifiable by reason of any defense of justification provided by law for which neither the code nor other statutory law defining the offense provides exceptions or defenses dealing with the specific situation involved and a legislative purpose to exclude the justification claimed does not otherwise plainly appear.
>
> [N.J.S.A. 2C:3-2(b).]

Distinct from the general justification provision, as a form of justification in prosecutions for theft, "New Jersey has long recognized a claim[]of[]right defense." State v. Mejia,

45

141 N.J. 475, 497 (1995) (citing State v. Mayberry, 52 N.J. 413, 431 (1968), cert. denied, 393 U.S. 1043, 89 S. Ct. 673, 21 L. Ed. 2d 593 (1969)), overruled on other grounds, State v. Cooper, 151 N.J. 326, 378 (1997). The Legislature codified the defense in N.J.S.A. 2C:20-2(c), which mirrors the language of the Model Penal Code § 223.1. See Model Penal Code and Commentaries, § 223.1(3) & comment 4, at 126, 151 & n.79 (1980).[7] Our Code provides:

> (c) Claim of right. It is an affirmative defense to prosecution for theft that the actor:
>
>> (1) Was unaware that the property or service was that of another;
>>
>> (2) Acted under an honest claim of right to the property or service involved or that he had a right to acquire or dispose of it as he did; or
>>
>> (3) Took property exposed for sale, intending to purchase and pay for it promptly, or reasonably believing that the owner, if present, would have consented.
>
> [N.J.S.A. 2C:20-2(c)(1)-(3); see also Mejia, supra, 141 N.J. at 497-98.]

"'[T]he Code adopts the position that a genuine belief in one's legal right shall in all cases be a defense to theft' when

_____

[7] "When a provision of the Code is modeled after the [Model Penal Code], it is appropriate to consider the [Model Penal Code] and any commentary to interpret the intent of the statutory language." State v. Robinson, 217 N.J. 594, 606 (2014) (citation omitted).

46

credible evidence supports the defense." Mejia, supra, 141 N.J. at 497 (quoting II New Jersey Code: The Final Report of the New Jersey Law Commission § 2C:20-2, commentary at 221-22 (1971)); accord Model Penal Code, supra, comment 4(b) to § 223.1, at 157 ("[A] genuine belief in one's legal right should in all cases be a defense to theft."). The defense is not restricted to cases in which the defendant asserts a belief that the property at issue is his or her own. State v. Ippolito, 287 N.J. Super. 375, 381 (App. Div.) (citing Mejia, supra, 141 N.J. at 496), certif. denied, 144 N.J. 585 (1996); see also Mejia, supra, 141 N.J. at 497 ("[D]efendant entitled to defense because he honestly but incorrectly believed he was assisting rightful owner in removing television set." (citing State v. Taplin, 230 N.J. Super. 95, 100 (1988)). Subsection (c)(2) applies where "the defendant may know that the property belongs to another but where he believes that he is nevertheless entitled to behave the way he does." Model Penal Code, supra, comment 1 to § 223.1, at 155. The "claim of right defense is not premised on a failure of proof, but on justification." Mejia, supra, 141 N.J. at 496 (citation omitted). Thus, as a justification, it "goes beyond merely negating an element of a theft . . . charge." Ippolito,

supra, 287 N.J. Super. at 381 (citing Mejia, supra, 141 N.J. at 496).[8]

We concur with the Appellate Division majority in this case that, if warranted by the evidence at trial, a jury charge with respect to a justification based on a claim of right would be appropriate in this case.  Saavedra, supra, 433 N.J. Super. at 520-21 (quoting Model Jury Charge (Criminal), "Claim of Right Defense to Theft Offenses" (Nov. 4, 1996)).  Subject to the trial court's ruling on a full record, the evidence may also warrant a jury charge with respect to justification as a defense to a charge of official misconduct under N.J.S.A. 2C:30-2.

Although the Quinlan balancing test for LAD retaliation cases does not govern the availability of a claim of right or other justification in a criminal prosecution, evidence that would be relevant to that test in a civil case may be considered if a jury evaluates defendant's claim of right defense or other defense of justification.  See Quinlan, 204 N.J. at 268-71.

---

[8] Although the defense of justification under N.J.S.A. 2C:3-1(a) may be asserted as to both charges against defendant if the record supports it, the specific claim of right affirmative defense authorized by N.J.S.A. 2C:20-2 expressly relates to a "prosecution for theft."  N.J.S.A. 2C:20-2.  Given the limited record before the Court, we make no determination as to whether a jury's finding that defendant acted with a "claim of right" under N.J.S.A. 2C:20-2 would affect not only the charge of theft by unlawful taking of public documents under N.J.S.A. 2C:20-3 and N.J.S.A. 2C:20-2(b)(2)(g), but the charge of official misconduct under N.J.S.A. 2C:30-2(a) as well by virtue of the nexus between the official misconduct and theft charges.

48

Should this matter proceed to trial, the jury may consider such issues as the contents of the documents, the presence or absence of confidentiality policies, the privacy interests at stake, the circumstances under which defendant gained access to the documents, the extent to which she disclosed them, and her reasons for taking an original or copying a document rather than simply seeking it in discovery. Ibid. With a complete factual record, the trial court will be in a position to instruct the jury regarding a claim of right or other justification as a defense to the State's allegations.

Contrary to the suggestion of the dissent, our discussion of factors that may be considered if a claim of right defense is submitted to a petit jury in this case does not constitute an effort to "clarify[]" the test set forth in Quinlan. Post at __ (slip op. at 7-9). In this appeal, we review a motion to dismiss a criminal indictment, not a cause of action premised upon the LAD or CEPA. The import of Quinlan in employment discrimination litigation is not before the Court. Accordingly, we do not respond to our dissenting colleague's comments about the holding of Quinlan, and confine our analysis to the issues of this case.

V.

The judgment of the Appellate Division is affirmed, and the matter is remanded to the trial court.

49

CHIEF JUSTICE RABNER; JUSTICES LaVECCHIA, FERNANDEZ-VINA, and SOLOMON; and JUDGE CUFF (temporarily assigned) join in JUSTICE PATTERSON's opinion.  JUSTICE ALBIN filed a separate, dissenting opinion.

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

       v.

IVONNE SAAVEDRA,

    Defendant-Appellant.

JUSTICE ALBIN, dissenting.

A grand jury was impanelled to determine whether to return criminal charges against Ivonne Saavedra for the unlawful taking of documents from her employer, the North Bergen Board of Education. That Saavedra removed confidential documents from the Board's office was made clear to the grand jury. Saavedra's motive for removing those documents, however, was not disclosed to the grand jury because the prosecutor blocked a grand juror's highly relevant questions posed to a witness. As a result, the grand jury was not told that Saavedra gave those documents to her attorney for the purpose of pursuing against the Board an employment discrimination lawsuit based on our Law Against Discrimination (LAD), N.J.S.A. 10:5-1 to -42, and the Conscientious Employee Protection Act (CEPA), N.J.S.A. 34:19-1 to -8. Nor was the grand jury told that Saavedra's attorney -- after he filed the lawsuit -- provided the documents to the

1

Board's attorney in response to a discovery request. The prosecutor led the grand jury to believe that Saavedra had spirited away the documents for some nefarious reason, and that the Board learned of the "theft" through its own investigation.

I cannot agree with the majority that Saavedra suffered no harm as a result of the prosecutor's suppression of relevant information sought by the grand jury. The grand jury was entitled to answers to critical questions posed to a witness. The prosecutor subverted the grand jury's independence and, in doing so, denied Saavedra her right to a fair grand jury presentation. Unlike the majority, I would dismiss the indictment and require the prosecutor to re-present the matter to a new grand jury.

In addition, the majority concedes that a claim-of-right defense is available to Saavedra. A jury must decide whether Saavedra's taking of confidential documents for the purpose of pursuing a LAD or CEPA action falls within the realm of that defense. The grand jury, however, was never charged on that defense. Of equal concern is that the state of our law concerning the claim-of-right defense at the time of Saavedra's alleged offense was hopelessly confusing as a result of this Court's decision in Quinlan v. Curtiss-Wright Corp., 204 N.J. 239, 269-71 (2010). The majority's decision makes an attempt but does not succeed in clarifying Quinlan's amorphous test. In

2

the end, a reasonable person will not know in advance the line separating lawful from unlawful conduct.

I therefore respectfully dissent.

I.

A.

In November 2009, Saavedra filed a civil action against her employer, the North Bergen Board of Education, alleging violations of LAD and CEPA. In connection with the filing of this employment-discrimination lawsuit, Saavedra removed confidential documents from the Board's office without permission. Approximately a year and a half after the filing of Saavedra's lawsuit, her counsel provided the confidential documents to the Board's litigation attorney "in response to [the Board's] requests for all documents in [defendant's] possession which may include confidential and/or privileged information." The Board's litigation attorney alerted the Board's general counsel, Jack Gillman, about the documents received in discovery. Gillman then contacted the Hudson County Prosecutor's Office concerning the documents received during civil discovery.

Gillman was the only witness called by the prosecutor to testify before the grand jury. In response to questioning by the prosecutor, Gillman testified that Saavedra had 367 Board documents in her possession, of which at least 69 were

3

originals.  He explained the highly confidential nature of some of the documents.  He also testified that she was not permitted to take any of those documents from the Board's office.

After the prosecutor completed his questioning, a grand juror asked:  "When did she take out these documents?  What's she going to do with them?  The documents, what she do with them?"  The prosecutor responded:  "I don't believe Mr. Gillman can speculate as to what she was going to do with the actual documents."

However, Gillman did not have to speculate about what Saavedra had done with the documents.  He knew, and so did the prosecutor.  Gillman told the grand jury earlier that Saavedra had a lawsuit against the Board, and cryptically stated that "[a]nother attorney . . . had received [highly confidential, very sensitive] documents in discovery."  But Gillman did not tell the grand jury that Saavedra gave the documents to the Board in discovery.  The grand juror's perceptive question would have disclosed that Saavedra's motive was not that of a burglar but that of a plaintiff pursuing an employment discrimination lawsuit.  Saavedra was not hiding the documents or concealing the truth.  The prosecutor had no authority to censor information flowing to the grand jury -- no authority to sustain his own objection to a legitimate and relevant question posed by a grand juror.  Even if the information possessed by Gillman

could be classified as hearsay, it was admissible before the grand jury. See State v. Thrunk, 157 N.J. Super. 265, 278 (App. Div. 1978) (noting that hearsay evidence is admissible before grand jury).

B.

"The grand jury is a judicial, investigative body, serving a judicial function; it is an arm of the court, not a law enforcement agency or an alter ego of the prosecutor's office." In re Grand Jury Appearance Request by Loigman, 183 N.J. 133, 141 (2005). It is "a bulwark against hasty and ill-conceived 'prosecutions and continues to lend legitimacy to our system of justice by infusing it with a democratic ethos.'" Id. at 139 (quoting State v. Fortin, 178 N.J. 540, 638 (2004)).

The grand jury has "extraordinary powers," including "the power to investigate upon its own suggestion." Id. at 141-42 (internal citations and quotation marks omitted). For example, the grand jury "can direct the prosecutor to subpoena witnesses and evidence." Id. at 142. Grand jurors, moreover, "have the right" to ask questions of witnesses. State v. White, 326 N.J. Super. 304, 314 (App. Div. 1999), certif. denied, 163 N.J. 397 (2000). Indeed, the assignment judge instructs grand jurors that they have that right. Ibid. "[L]egitimate inquiries of a grand juror should not be frustrated under the guise of screening" by a prosecutor. Ibid.; see also 31 New Jersey

5

Practice, Criminal Practice and Procedure § 10:20, at 469

(Leonard N. Arnold) (2011-12) (stating that prosecutor may

"screen questions that grand jurors wish to propound to

witnesses so long as this does not infringe on the grand jury's

independence").

The bottom line is that a prosecutor cannot thwart a grand

jury's effort to secure relevant evidence that will bear on its

charging decision.  The prosecutor's role is to assist the grand

jury, and "'to see that justice is done.'"  In re Loigman,

supra, 183 N.J. at 144 (quoting State v. Frost, 158 N.J. 76, 83

(1999)).  A prosecutor must scrupulously honor the grand jury's

independence, particularly because the prosecutor operates in

that forum without the oversight of a judge or the check of a

defense attorney.  Id. at 144-45.

This case does not implicate our jurisprudence on the

prosecutor's affirmative duty to present exculpatory evidence --

a duty that attaches regardless of a grand juror's inquiries.

State v. Hogan, 144 N.J. 216, 236 (1996).  This case simply

involves the fundamental right of a grand juror to ask questions

intended to elicit relevant information.  By suppressing a grand

juror's legitimate questions and rationing the evidence, the

prosecutor allowed a distorted picture of Saavedra's motives.

The grand jury had a right to the information it requested, and

Saavedra had the "right to a fair grand jury presentation."  See In re Loigman, supra, 183 N.J. at 145.

I would dismiss the indictment and allow the prosecutor to present the matter again to a grand jury.

## II.

I agree with the majority that Saavedra is entitled to assert a claim-of-right defense -- a justification defense -- at trial.  I also would require that the grand jury be charged on such a defense, provided evidence suggests that Saavedra took the documents under a lawful claim of right for the purpose of pursuing a LAD and CEPA action.  See 31 Criminal Practice and Procedure, supra, § 10:20, at 469 (noting prosecutor's obligation to charge on "the gist of [an] exonerating defense or justification").  Any reliance on a justification defense must relate to the time Saavedra is alleged to have committed the offense of theft.  See State v. Perez, 220 N.J. 423, 438 (2015) (stating that Ex Post Facto Clause of the U.S. Constitution prohibits law that "deprives one charged with crime of any defense available . . . at the time when the act was committed" (internal quotation marks omitted)).  We cannot apply retroactively a newly minted justification defense that was not on the books during the relevant time period if it disadvantages Saavedra.  See State v. Natale, 184 N.J. 458, 491 (2005) (stating that retrospective application of law that

disadvantages defendant violates Ex Post Facto Clause).  A court must identify the prevailing law governing Saavedra's conduct at the time she took the documents from the Board's office.

In Quinlan, supra, 204 N.J. at 269-71, the Court articulated a seven-factor totality-of-the-circumstances test in deciding whether the taking of an employer's documents is protected activity under LAD.  That test hardly places a reasonable person on notice of the line demarcating lawful from unlawful conduct.  The test asks the trier of fact to determine: (1) how the employee came to possess the document; (2) "what the employee did with the document"; (3) "the nature and content of the particular document in order to weigh the strength of the employer's interest in keeping the document confidential"; (4) whether the employee violated a "clearly identified company policy" on confidentiality; (5) "the circumstances relating to the disclosure of the document to balance its relevance against considerations about whether its use or disclosure was unduly disruptive to the employer's ordinary business"; (6) "the strength of the employee's expressed reason for copying the document"; and (7) how the court's decision in the particular case "bears upon" the "broad remedial purposes" of LAD and "the effect, if any, that either protecting the documents by precluding its use or permitting it to be used will have upon

the balance of legitimate rights of both employers and employees."  Id. at 269-71.

The Quinlan factors do not define a clear and understandable claim-of-right defense in civil or criminal cases because the standard is too amorphous, too wide open -- too susceptible to various inconsistent outcomes.  Employees need standards they can grasp at the time they make decisions rather than later, when a court is passing judgment on their conduct.

The majority holds that "the Quinlan balancing test for LAD retaliation cases does not govern the availability of a claim of right or other justification in a criminal prosecution."  Ante at ___ (slip op. at 48).  However, the majority's valiant effort to make the claim-of-right defense sufficiently clear -- to give fair notice of the limits placed on an employee's conduct -- also falls short.  The majority states that, in considering a claim-of-right defense, "the jury may consider such issues as[:]

> [1] the contents of the documents,
>
> [2] the presence or absence of confidentiality policies,
>
> [3] the privacy interests at stake,
>
> [4] the circumstances under which defendant gained access to the documents,
>
> [5] the extent to which she disclosed them, and

9

[6] her reasons for taking an original or copying a document rather than simply seeking it in discovery.

[Ante at ___ (slip op. at 48).]

The majority's approach suffers from the same shortcomings as the Quinlan approach in a LAD case -- it does not give reasonable and clear notice of what the law proscribes before an employee acts. The law should not place whistleblowers in a position where they are playing Russian roulette with their careers or their liberty. Like the Quinlan standard, the majority's new approach is overly complicated and too open to differing interpretations.

Furthermore, the majority has not identified whether reasonable persons in 2009 would have anticipated the standard it now enunciates.

To the extent there is any distance between the standards set forth in Quinlan and here, it may be possible that an employee taking confidential documents from an employer's files to pursue a LAD claim will win a multi-million dollar discrimination lawsuit but serve time in prison for committing a crime. The potential for such discordant results will not bring credit to our justice system.

### III.

At least going forward, I favor a much simpler approach to claim-of-right defenses in both civil and criminal cases, the

10

one I articulated in my dissent in Quinlan.  Under my template, an employee would be permitted to take a confidential document to an appropriate authority only if the document "clearly indicates that the employer was engaged in illegal conduct." See Quinlan, supra, 204 N.J. at 282 (Albin, J., dissenting). Moreover, an employee with a potential LAD or CEPA claim may "have the right to preserve a document that he or she reasonably believes an employer is about to destroy or alter."  Ibid.  On the other hand, when an employee has an ongoing lawsuit and no reasonable fear that the employer will destroy relevant evidence, the taking of confidential documents by an employee cannot be justified.  Ibid.

                              IV.

    In summary, I would dismiss the indictment because the prosecutor undermined the independence of the grand jury by interfering with its ability to elicit relevant information bearing on the decision whether to return an indictment.  If the Quinlan standard was the reigning law for claim-of-right defenses, then, like Judge Simonelli, the dissenting judge in the Appellate Division, State v. Saavedra, 433 N.J. Super. 501, 536 (2013) (Simonelli, J.A.D., dissenting), I have doubts that the law gave clear notice of the line demarcating criminal from non-criminal conduct.  Last, if the documents taken by Saavedra

                              11

were irrelevant to her LAD action, then the claim-of-right defense should not be available.

Accordingly, I respectfully dissent.

SUPREME COURT OF NEW JERSEY

NO.     A-68                          SEPTEMBER TERM 2013

ON APPEAL FROM          Appellate Division, Superior Court


STATE OF NEW JERSEY,

        Plaintiff-Respondent,

              v.

IVONNE SAAVEDRA,

        Defendant-Appellant.


DECIDED          June 23, 2015
                 Chief Justice Rabner                    PRESIDING

OPINION BY               Justice Patterson

CONCURRING/DISSENTING OPINIONS BY

DISSENTING OPINION BY      Justice Albin

| CHECKLIST | AFFIRM AND REMAND | DISSENT |
|---|---|---|
| CHIEF JUSTICE RABNER | X | |
| JUSTICE LaVECCHIA | X | |
| JUSTICE ALBIN | | X |
| JUSTICE PATTERSON | X | |
| JUSTICE FERNANDEZ-VINA | X | |
| JUSTICE SOLOMON | X | |
| JUDGE CUFF (t/a) | X | |
| TOTALS | 6 | 1 |