GEORGE HERBERT, PROSECUTOR, v. CITY OF ATLANTIC CITY, RESPONDENT.

Argued June 2, 1914—Decided February 19, 1915.

1. A police officer who attempted to collect money for the keeper of a bawdy house, and in the attempt used loud and profane language, and attempted to go to the room of a guest in a hotel, was guilty of misconduct and of behavior unbecoming an officer, and this conduct was the direct antithesis of good behavior under *Comp. Stat.*, p. 2467, § 537.
2. It afforded no legal ground of excuse to the charge of misconduct for which the police officer was removed, that he was not on duty when he committed the act complained of.
3. In reviewing the action of the board of commissioners upon the trial of a police officer, this court will not weigh the evidence taken before the board, but will only consider such evidence to see whether it affords a rational basis for the judgment rendered.
4. Chapter 22 of the special session of 1913 (*Pamph. L.*, p. 836), amending the "Commission Government act" of 1911, by the fourth section vests all judicial powers and duties possessed by the mayor and common council and other executive or legislative bodies in the city in the board of commissioners, and these powers and duties must be retained by the board, and not be delegated.

On *certiorari.*

Before Justices SWAYZE, PARKER and KALISCH.

For the prosecutor, *Charles C. Babcock* and *Robert H. McCarter.*

For the respondent, *Theodore W. Schimpf*, city attorney.

The opinion of the court was delivered by

KALISCH, J. The prosecutor was a member of the police department of Atlantic City. He was also a white slave officer for the United States government and as such it was his duty to enforce all federal and white slave acts bordering on the social evil, &c.

Complaint was made by Josiah White & Sons Company, against the prosecutor, substantially, as follows: That at about three-thirty o'clock in the morning of December 16th, 1913, the prosecutor, accompanied by a man he claimed to be a chauffeur of a taxicab, appeared at the complainant's hotel, the Malborough-Blenheim, where and when the prosecutor claimed that the taxicab driver had brought a man from 134 North Carolina avenue to the hotel, who owed a bill for liquor at that place and that he, the prosecutor, was there to collect it; that the chauffeur could identify the man; that he, the prosecutor, insisted upon being permitted to go to the man's room and upon that privilege being denied him, he said he was an officer of the United States government and would make it hot for the hotel; that he would return in the morning and if he did not get the money he would take steps to punish the hotel; that the prosecutor was in a semi-intoxicated condition, and used loud, obscene and profane language in endeavoring to browbeat the clerks and watchmen of the hotel. The complaint further discloses that a few minutes before the prosecutor appeared at the hotel one of the night clerks of the hotel was called up on a telephone by a woman claiming to be the proprietress of a house of ill-fame, conducted on North Carolina avenue in Atlantic City; that she stated over the telephone that a man had just left her place for the hotel and that he owed her $27.50, and requested the night clerk to collect the amount for her, which he refused to do; whereupon she asked him to find out who the man was and let her know, and this request being likewise refused she rang off, but that the night clerk still continued to listen on the wire, and heard the woman call up Detective Herbert, the prosecutor, and the following conversation: "Woman: Hello; who is this? Man: Detective Herbert. Hello girlie, what did you find out? Woman: Nothing. Herbert: Have you the chauffeur there that took him to the hotel? Woman: Yes. Herbert: I'll go down with him and collect it for you."

This complaint was lodged with the director of public safety of Atlantic City, which city had adopted a commission

form of government, under the act of 1911. *Pamph. L., p.* 462.

The prosecutor being a member of the police department of the city of Atlantic City, held a position from which he could not be removed, except for cause, under the tenure of office act. 2 *Comp. Stat., p.* 2468, § 541.

Upon this complaint the director of public safety charged the prosecutor as follows—*first,* with misconduct as a member of the police department of Atlantic City; *second,* with malfeasance in office as such member; *third,* with conduct unbecoming an officer as such member; *fourth,* with being intoxicated while a member of the police department; *fifth,* with using his membership in such police department for an unlawful purpose.

The complaint and formulated charges were duly presented to the board of commissioners and duly adopted and approved by them, and the commissioners fixed a time and place for a hearing of the charges. Personal service of a copy of the complaint, affidavit, specification of charges and the resolution of the board of commissioners, was duly made upon the prosecutor.

At the time and place fixed, the prosecutor appeared with counsel before the entire board of commissioners, where testimony was taken and arguments of counsel heard and the board having considered the same adopted a resolution finding the prosecutor guilty of the first four specifications of charges, and acquitted him of the fifth specification, and upon the charges of which the prosecutor was found guilty, he was, by resolution of the board, dismissed from the force.

The validity of the proceedings of the board of commissioners is first challenged, by the prosecutor, upon the ground that the complaint does not set forth facts which amount to a legal complaint of misconduct or inefficiency.

The prosecutor relies on section 537 of the act relating to "Fire and Police" (2 *Comp. Stat., p.* 2467), which, among other things, provides that the term of all persons employed in the police department, where by the statute the term of office of such person is not fixed, shall be during good be-

havior, efficiency and residence, &c.   *   *   *   and that no such person shall be removed from office or employment in the police department or from the police force for political reasons or for any other cause than incapacity, misconduct, nonresidence or disobedience of just rules and regulations, &c.

The plain reading of this section does not sustain the contention made by counsel of prosecutor.

The complaint clearly sets out facts which constitute misconduct on the part of the prosecutor, as a member of the police department, and with behavior unbecoming an officer of that department. The complaint charges the prosecutor with acting as a collector for a bawdy-house keeper, for a bill contracted there, and which we think, independent of the other circumstances surrounding the attempt to collect the same, was a sufficient charge of misconduct, under the section quoted. He was setting an evil example for those entrusted with the enforcement of the law. It is to be further noted that by statute, the officer is to hold during good behavior. Such conduct of the prosecutor, as complained of in the complaint, was the direct antithesis to good behavior and which would be aptly denominated misconduct or conduct unbecoming an officer, or malfeasance in office.

It is argued for the prosecutor that because he was not on duty at the time as a police officer when the episode related occurred, therefore, the quoted section of the statute is not applicable to him. In other words, the contention practically is that a police officer when off duty may misbehave and misconduct himself as much as he pleases, namely, he may be engaged openly in conduct tending to reflect upon the morale and discipline of the police force and department, without being held to account for such misbehavior or misconduct. If this were so, then the discipline and morale of the police force, which the legislature evidently intended to secure by the provision of the statute referred to, is seriously threatened, and its efficacious object of requiring good behavior and denouncing misconduct of a police officer will be signally defeated.

It is next argued that the evidence was insufficient to sustain the verdict and judgment. The evidence fairly sustains the complaint, and charges made thereunder, and the result arrived at by the board of commissioners. This being so the conclusion reached by the board, upon well settled principles, will not be disturbed.

In *Reilly* v. *Mayor and Board of Aldermen of Jersey City,* 64 *N. J. L.* 508, Mr. Justice Gummere, speaking for this court (on *p.* 510), says: "In reviewing the action of a board of police commissioners, this court will not weigh the evidence taken before them, for the purpose of reaching an independent conclusion on the question of the guilt or innocence of the prosecutor. It will only consider such evidence for the purpose of determining whether or not it affords a rational basis for the judgment against him. If it does, then no matter whether the evidence be weak or strong, this court will not interfere. *Dodd* v. *Camden, 56 N. J. L.* 258." Other cases to the same effect are *Devault* v. *Camden,* 48 *Id.* 433; *Ayers* v. *Newark,* 49 *Id.* 170; *Cavanagh* v. *Police Commissioners,* 59 *Id.* 412; *Alcutt* v. *Police Commissioners,* 66 *Id.* 173.

Lastly, it is argued that the board of commissioners was without jurisdiction to hear and determine the charges against the prosecutor because of an ordinance adopted by the board, November 6th, 1912, which reads as follows:

"Section 1. That officers and members of the police and fire departments of Atlantic City shall be appointed and removed by the director of the department of public safety, removals being had upon charges in writing served upon the person accused, and after hearing thereon, as provided by law."

A complete answer to this contention is to be found in the act of 1913, amendatory of the act of 1911. *Pamph. L., p.* 836.

This act clearly contemplates a trial by the board of commissioners.

Section 4 of the act expressly provides that: "The board of commissioners shall have and possess all administrative,

judicial and legislative powers and duties now had and possessed and exercised by the mayor and city council and all other executive or legislative bodies in said city. * * *

"The executive, administrative and legislative powers, authority and duties shall be distributed into and among the five departments."

It is to be noted that the judicial powers vested in the board of commissioners is not included in this distribution of the exercise of powers and duties and it must be assumed that the legislature clearly intended that such judicial powers should be retained by the commissioners, as a board, and not to be delegated by it.

It therefore follows as a logical result that no resolution or ordinance adopted by the board of commissioners of Atlantic City could lawfully transfer these judicial powers to the director of the department of public safety or of any other department.

These views lead to an affirmance of the proceedings of the board of commissioners, with costs.