Opinions of the Colorado Supreme Court are available to the public and can be accessed through the Judicial Branch's homepage at http://www.courts.state.co.us. Opinions are also posted on the Colorado Bar Association's homepage at http://www.cobar.org.

ADVANCE SHEET HEADNOTE
February 18, 2020

**2020 CO 14**

**No. 17SC430, *People v. Berry*—Criminal Law—Abuse of Public Office—Embezzlement of Public Property—Official Misconduct.**

The supreme court considers two issues in this case. First, for the crime of embezzlement of public property, under section 18-8-407, C.R.S. (2019), does "public property" include property that is in the government's possession but not owned by the government? And second, for the crime of official misconduct, under section 18-8-404, C.R.S. (2019), what is an act "relating to [an official's] office?"

Regarding the first question, the supreme court holds that the statute prohibiting embezzlement of public property criminalizes only the embezzlement of property that is owned by the government. Concerning the second question, the supreme court concludes that the prohibition on official misconduct should be broadly construed to include circumstances in which an official uses the opportunities presented by his or her office to engage in improper conduct.

The supreme court therefore affirms the decision of the court of appeals.

# The Supreme Court of the State of Colorado

2 East 14th Avenue • Denver, Colorado 80203

## 2020 CO 14

### Supreme Court Case No. 17SC430
*Certiorari to the Colorado Court of Appeals*
Court of Appeals Case No. 15CA1394

**Petitioner/Cross-Respondent:**

The People of the State of Colorado,

v.

**Respondent/Cross-Petitioner:**

William Steven Berry.

### Judgment Affirmed
*en banc*
February 18, 2020

**Attorneys for Petitioner/Cross-Respondent:**
Philip J. Weiser, Attorney General
Jacob R. Lofgren, Assistant Attorney General
    *Denver, Colorado*

**Attorneys for Respondent/Cross-Petitioner:**
Elkus & Sisson, P.C.
Reid J. Elkus
Lucas Lorenz
Kathryn Sheely
    *Greenwood Village, Colorado*

**JUSTICE HART** delivered the Opinion of the Court.

**JUSTICE SAMOUR** concurs in part and dissents in part, and **CHIEF JUSTICE COATS** joins in the concurrence in part and dissent in part.

¶1 In 2014, William Steven Berry, who was at the time a deputy of the Lake County Sheriff's Office, obtained several firearms from the office evidence locker, gave one away, attempted to sell another, and kept two for himself. For this conduct, Berry was convicted of embezzlement of public property in violation of section 18-8-407, C.R.S. (2019), and first-degree official misconduct in violation of section 18-8-404, C.R.S. (2019). This case requires us to answer a question of first impression about each of these statutory provisions. First, does "public property" include property that is in the government's possession but not owned by the government? And second, what is an act "relating to [an official's] office" for purposes of the crime of official misconduct?[1]

¶2 We hold that the statute prohibiting embezzlement of public property criminalizes only the embezzlement of property that is owned by the government.

---

[1] We granted certiorari to review the following issues:

1. Whether a sheriff's deputy, who removed several weapons from an evidence locker where they were under the possession and control of the sheriff's department, and then converted them to his own personal use, can be charged and convicted of embezzlement of public property under section 18-8-407(1), C.R.S. (2017).

2. Whether the court of appeals erred in finding that the cross-petitioner's purchase of firearms held in the evidence locker at the police station where he was a sheriff deputy was "an act relating to his office" as that phrase is used in section 18-8-404, C.R.S. (2017).

3

Further, we conclude that the prohibition on official misconduct should be broadly construed to include circumstances, like those in this case, in which an official uses the opportunities presented by his or her office to engage in improper conduct. We therefore affirm the decision of the court of appeals on both questions.

## I. Facts and Procedural History

¶3 In August 2013, Berry was one of several Lake County Sheriff's Office deputies who responded to a report of domestic violence involving P.E. and J.V. After J.V. was arrested, P.E. informed the officers that J.V. kept several firearms in the home and that she did not feel comfortable having them there. At P.E.'s request, the officers confiscated four firearms—one of which was a rare Colt handgun worth several thousand dollars—and stored them in the sheriff's office evidence locker.

¶4 After the charges against J.V. were resolved, the district attorney authorized the sheriff to either release or destroy the firearms. Because J.V. was an undocumented immigrant who had since been deported, there was no possibility of releasing the firearms back to him. While P.E. remained in Lake County, she too was an undocumented immigrant, and the sheriff had a policy against releasing weapons to undocumented immigrants. Consequently, the sheriff planned to destroy the firearms.

¶5 Before the firearms could be destroyed, however, Berry saw P.E. exiting a store and followed her in his patrol car as she drove away. When she stopped at a gas station, Berry approached her and inquired about purchasing the firearms from her for $500. During this encounter, he was on duty and in full uniform. When P.E. expressed concern about whether such a transaction would be legal, Berry responded by telling her "[o]f course. I am a representative of the law. If I come to you with this offer, it is because I can do it, because it is legal." P.E. then agreed to sell the firearms, including the rare Colt, to Berry for $500. Berry subsequently went to P.E.'s house, paid her $500, and had her sign a bill of sale for the firearms.

¶6 What happened next was disputed at trial. Berry claimed that P.E. went to the sheriff's office and had the firearms released to her. In support of this claim, Berry produced a release form to collect the firearms from the evidence locker that was purportedly signed by P.E. P.E. testified, however, that Berry had told her he would be able to "grab" the firearms from the locker. Further, she testified that she had neither seen nor signed the release form, that she never went to the evidence locker to retrieve the firearms, and that she never saw them again after they were removed from her home. One way or another, Berry ended up in possession of the four firearms.

¶7    Berry gave one of the firearms to the deputy in charge of the evidence locker when the firearms were removed as a show of gratitude for his help with obtaining the weapons. Berry attempted to sell the Colt handgun to a buyer in California, but the firearms dealer he used ran into trouble shipping the handgun, so the sale was not completed.

¶8    When the buyer did not receive the Colt, he called the Lake County Sheriff's Office looking for Berry. The sheriff's office conducted an internal investigation and concluded that Berry had, with the help of another deputy, improperly removed the firearms from the evidence locker and kept them for himself, seeking to profit from the sale of the valuable Colt handgun.

¶9    Berry was charged with, among other offenses, embezzlement of public property and first-degree official misconduct. A jury found Berry guilty of both crimes, and he was sentenced to probation. On appeal, a division of the court of appeals vacated Berry's conviction for embezzlement of public property and affirmed his conviction for first-degree official misconduct.

¶10   The People petitioned for certiorari on the embezzlement issue, and Berry cross-petitioned on the official misconduct count. We granted both petitions.

## II. Analysis

¶11   After setting forth the standard of review, we consider whether Berry's removal of the firearms from the evidence locker in the Lake County Sheriff's

6

Office and conversion of those weapons for his own personal use constituted embezzlement of public property. We conclude that because the firearms were not public property, Berry's actions did not violate the statutory prohibition against embezzlement of public property. We then examine whether Berry committed official misconduct when he approached P.E. in his patrol car while he was on duty and in uniform to purchase the firearms from her. We conclude that Berry's conduct did amount to official misconduct.

## A. Standard of Review

¶12 Both questions we address in this case are matters of statutory interpretation that we review de novo. *McCoy v. People*, 2019 CO 44, ¶ 37, 442 P.3d 379, 389. Our goal in construing a statute is to determine and give effect to the intent of the General Assembly. *People v. Diaz*, 2015 CO 28, ¶ 12, 347 P.3d 621, 624. "In so doing, we interpret words and phrases used in statutes according to their generally accepted meaning. In addition, we examine particular statutory language in the context of the statute as a whole." *People v. Graves*, 2016 CO 15, ¶ 27, 368 P.3d 317, 326 (citation omitted). If we conclude that the statutory language is unambiguous, we end our inquiry there. *McCoy*, ¶ 38, 442 P.3d at 389. Only if the statutory language, considered in context, is susceptible of more than one reasonable interpretation will we turn to other rules of statutory construction. *See People v. Jones*, 2015 CO 20, ¶ 10, 346 P.3d 44, 48.

## B. "Public Property" Is Property Owned by the State or a Political Subdivision

¶13 Colorado has criminalized the embezzlement of public property since it became a state. *See* G.L. 1877, § 658. As the court of appeals noted, the current version of the embezzlement statute, section 18-8-407, is a direct descendant of the first such law. *People v. Berry*, 2017 COA 65, ¶ 19, __ P.3d __. Section 18-8-407(1) provides:

> Every public servant who lawfully or unlawfully comes into possession of any public moneys or public property of whatever description, being the property of the state or of any political subdivision of the state, and who knowingly converts any of such public moneys or property to his own use or to any use other than the public use authorized by law is guilty of embezzlement of public property. Every person convicted under the provisions of this section shall be forever thereafter ineligible and disqualified from being a member of the general assembly of this state or from holding any office of trust or profit in this state.

No definition of "public property" is provided in the statute. However, both the phrase itself and the statutory context suggest a definition: Public property, as used in section 18-8-407, is property owned by a state or a political subdivision of the state.

¶14 We must attribute to words their plain and ordinary meaning. *Graves*, ¶ 27, 368 P.3d at 326. "Public property" is commonly defined to mean "something owned by the city, town, or state." *Public Property*, Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/public%20property;

[https://perma.cc/5PAZ-P39W]; *see also* 63 Am. Jur. 2d *Property* § 11 (2019) ("Public property is that owned by the public as such in some governmental capacity."); *Public Property*, Black's Law Dictionary (11th ed. 2019) ("State- or community-owned property not restricted to any one individual's use or possession."); *cf. People v. Gallegos*, 260 P.3d 15, 22 (Colo. App. 2010) (applying the Black's Law Dictionary definition to interpret "public property" as used in section 18-8-407). Thus, the phrase "public property" alone appears unambiguous.

¶15 The context of the phrase "public property" within the criminal statutes further supports this plain meaning in at least three ways. First, the prohibition against embezzlement of public property is contained within the article of our criminal code focused on offenses related to governmental operations, not the article focused on offenses against property. Thus, unlike other "offenses against property," where the identity of the property owner is largely inconsequential, for embezzlement of "public property," the identity of the property owner—the public—is an essential part of the offense.[2]

---

[2] Notably, the General Assembly has eliminated the crime of "embezzlement" as an "offense against property." *See* § 18-4-403, C.R.S. (2019) ("If any law of this state refers to or mentions larceny, stealing, embezzlement (except embezzlement of public moneys) . . . that law shall be interpreted as if the word 'theft' were substituted therefor; and in the enactment of sections 18-4-401 to 18-4-403 it is the intent of the general assembly to define one crime of theft and to incorporate

¶16 Second, immediately following the phrase "public property" is the explanatory phrase "being the property of the state or of any political subdivision of the state." § 18-8-407(1). The phrase "property of the state" clearly means that the property at issue belongs to the state. *See Wright v. People*, 91 P.2d 499, 502–03 (Colo. 1939) (interpreting a related statute that barred the use of "public funds" for private purposes and finding that certain funds were not subject to the statute because the money "never was a part of the public funds of the county; it belonged to [private individuals]"); *see also Starr v. People*, 157 P.2d 135, 137–38 (Colo. 1945) (applying the same statute barring the use of "public funds" for private purposes and concluding that the funds at issue were covered because they did belong to the public).

¶17 Third, the conduct prohibited by the statute is the conversion of public property "to any use other than the public use authorized by law." That the property at issue in the statute has a "public use authorized by law" further supports the conclusion that the statute's intended focus is on property owned by the state and not property merely within the state's possession. In this dispute, for

---

therein such crimes, thereby removing distinctions and technicalities which previously existed in the pleading and proof of such crimes.").

example, the firearms taken from the evidence locker had no "public use authorized by law." They were in the possession of the sheriff's office, but they were not owned by, nor could they be used by, the sheriff's office.[3]

¶18    The People, however, urge us to conclude that "public property" includes not only property owned by the state or a political subdivision, but also property possessed by the state or a political subdivision. In support of this interpretation, the People note that the word "property" on its own is defined in some dictionaries to include "something owned or possessed." *See, e.g.*, *Property*, Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/property; [https://perma.cc/859M-JBHR] (defining property as "something owned or possessed," or "the exclusive right to possess, enjoy, and dispose of a thing"); *Property*, Black's Law Dictionary (11th ed. 2019) (defining property as "the right to possess and use, the right to exclude, and the right to transfer"). We do not think that this fact renders the term "public property" ambiguous. First, the more

---

[3] We are not faced in this dispute with the question of whether a public servant who converts to his or her own use property leased or rented by the state or a political subdivision could be guilty of violating section 18-8-407. The Lake County Sheriff's Office had no ownership or other right of exclusive use and possession, such as a leasehold interest, in the firearms at issue here. The firearms were owned by a private party and were simply in the custody of the sheriff's office.

common meaning of the word "property" is something owned, and we have no reason to apply a less common meaning in this context. This is particularly the case when the term "public property" has its own definition that is separate from and more specific than the general concept of "property." Second, the placement of the prohibition against embezzlement of public property, which is listed under a different article of our criminal code than other crimes against property, supports the conclusion that the legislature intended to separately and more specifically define "public property." We thus conclude that "public property" within the context of section 18-8-407 refers to property owned by the state or a political subdivision.

¶19 Here, the firearms were in the possession of the Lake County Sheriff's Office. With the help of another deputy, Berry removed the firearms from the evidence locker and converted them for his own use. The Lake County Sheriff's Office never owned the firearms as property in the context of section 18-8-407, and neither did any other public entity. Even though Berry undoubtedly converted the firearms for his own personal use, the firearms were never "public property." Accordingly, Berry did not commit embezzlement in violation of section 18-8-407.

### C. Berry's Purchase of Firearms Held in the Sheriff's Office Evidence Locker Constituted an Act Relating to His Office

¶20 The second issue we are asked to resolve in this case is whether Berry's conduct in purchasing the firearms was "an act relating to his office but

constituting an unauthorized exercise of his official function." § 18-8-404(1)(a). Here, Berry approached P.E. in his patrol car and in full uniform, assured her that the sale of the firearms to him would be legal, and then acquired the firearms from the evidence locker with the help of another officer. Berry could only have engaged in this kind of conduct by virtue of his public office. As such, his conduct was well within the scope of official misconduct prohibited by section 18-8-404.

¶21    The question of what types of conduct are proscribed by Colorado's official misconduct statute has not been addressed by our court previously. Indeed, it was a question of first impression for the court of appeals here as well. Courts from states with very similar statutes, however, have construed the prohibition on official misconduct broadly. The New Jersey official misconduct statute, for example, uses language identical to the analogous Colorado law. *See* N.J. Stat. Ann. § 2C:30-2(a) (West 2019) (prohibiting official misconduct, which occurs when a public official "commits an act relating to his office but constituting an unauthorized exercise of his official functions"). Construing that provision, the New Jersey Supreme Court has explained that "when law-enforcement officers commit an act of malfeasance because of the office they hold or because of the opportunity afforded by that office, their conduct sufficiently relates to their office to support a conviction." *State v. Bullock*, 642 A.2d 397, 401 (N.J. 1994).

¶22    In *Bullock*, a suspended New Jersey state trooper improperly retained his police identification card. *Id.* at 398. He then used that card to detain an alleged drug dealer and to identify himself as a state trooper to another officer. *Id.* In considering this conduct, the court explained that "we look[] to the scope of a defendant's apparent authority to determine whether an act sufficiently related to the defendant's office to constitute official misconduct." *Id.* at 400. The court rejected the idea that official misconduct had to include misconduct that occurred within the limits of an official's "actual duties." *Id.* at 401. Instead, the court recognized that when an officer "purport[s] to act not as a private citizen but as a [public official]," his or her conduct may fall within the scope of prohibited official misconduct. *Id.*; *see also People v. Barnes*, 984 N.Y.S.2d 693, 696–97 (N.Y. App. Div. 2014) (interpreting similar language in a New York statute and explaining that "[a] police officer's actions fall within his or her official functions 'even if the right to perform [them] did not exist in the particular case,' such as when the officer was off-duty" (quoting *People v. Chapman*, 192 N.E.2d 160, 161 (N.Y. 1963))). Similarly, in Colorado when a public official commits an act of malfeasance that is made possible because of his office or the opportunities afforded to him by that office, he is engaged in misconduct "relating to his office but constituting an unauthorized exercise of his official function." § 18-8-404(1)(a).

14

¶23 Here, Berry approached P.E. in his patrol car while wearing his police uniform and inquired about purchasing the firearms that were stored at the sheriff's office. The only reason he had access to the firearms was because they were in the evidence locker, slated for destruction. Furthermore, Berry assured P.E. that his purchase was legal based on his status as a sheriff's deputy. P.E. testified at trial that his proposal to pay her for the firearms "sounded kind of weird, but he was wearing the police uniform, he was driving a patrol car." It was certainly reasonable for the jury to conclude, based on the evidence presented, that Berry obtained these firearms from P.E. because of the opportunity afforded by his office as a sheriff's deputy and therefore through an act "relating to his office" within the scope of the prohibition on official misconduct.

### III. Conclusion

¶24 We hold that the statute prohibiting embezzlement of public property criminalizes only the embezzlement of property that is owned by the government. Further, we conclude that the prohibition on official misconduct should be broadly construed to include circumstances, like those here, in which an official uses the opportunities presented by his or her office to engage in improper conduct. We therefore affirm the decision of the court of appeals.

**JUSTICE SAMOUR** concurs in part and dissents in part, and **CHIEF JUSTICE COATS** joins in the concurrence in part and dissent in part.

JUSTICE SAMOUR, concurring in part and dissenting in part.

## I. Introduction

¶25 The adage that "possession is nine-tenths of the law" dates back to 1616, more than four centuries ago. *Willcox v. Stroup*, 467 F.3d 409, 412 (4th Cir. 2006). But under the common law, this is more than an adage; it's a truism. In 1822, the Supreme Court observed that it was beyond doubt that "if a person be found in possession . . . it is *prima facie* evidence of his ownership." *Ricard v. Williams*, 20 U.S. 59, 105 (1822). Some decades later, in 1889, our court proclaimed that "[t]he actual control and possession of personal property . . . is *prima facie* indicative of ownership at law." *Herr v. Denver Milling & Mercantile Co.*, 22 P. 770, 773 (Colo. 1889). And this uncontroversial concept continues to hold sway in modern times. *See Willcox*, 467 F.3d at 412 (stating that actual possession under the common law has long been recognized as prima facie evidence of legal title in the possessor); *In re Lee Memory Gardens, Inc.*, 333 B.R. 76, 79 (Bankr. M.D.N.C. 2005) (noting that there is no doubt that possession of a chattel is prima facie evidence of ownership under the common law of North Carolina).

¶26 Consistent with the common law's recognition that possession often suffices to establish ownership, our General Assembly has wisely abstained from distinguishing between proprietary and possessory interests in defining property crimes. Instead, it has made clear that a person who has either a proprietary or

possessory interest in property may be a victim of theft, robbery, burglary, arson, trespass, tampering, and criminal mischief vis-à-vis that property. *See* § 18-4-101(3), C.R.S. (2019) (except where the context requires otherwise, "[p]roperty is that of 'another'" for purposes of all of the crimes against property if "anyone other than the defendant has a possessory or proprietary interest therein"); § 18-4-401(1.5), C.R.S. (2019) (for purposes of the crime of theft, "a thing of value is that of 'another' if anyone other than the defendant has a possessory or proprietary interest therein"). Thus, under the statutes governing property crimes, including theft, property or a thing of value is "of another" if someone other than the defendant has a possessory or proprietary interest in that property.

¶27 Yet, the majority today draws a line of demarcation between proprietary and possessory interests in property and declares that under the embezzlement of public property ("embezzlement") statute, section 18-8-407(1), C.R.S. (2019), only a proprietary interest counts. According to the majority, "property of the state," as that phrase is used in the embezzlement statute, excludes property in which the state lacks a proprietary interest, even if the state lawfully possesses the property. Maj. op. ¶¶ 1–2.

¶28 Though the majority treats the ownership requirement it imposes on embezzlement today as an open-and-shut proposition, it is far from it. For example, how does the prosecution prove that the state owns the public property

2

allegedly embezzled? Must the state have title or some other form of official ownership paperwork? What if it's property the state owns, but as to which no title or ownership paperwork exists or can be obtained? What if it's something leased by the state? What if it's something for which the state is currently making payments? What if it's something over which the state has exclusive possession and control—could that suffice? If money is involved, what proof is necessary to show the state owns that money? Does the state actually own any money when it holds such money in trust for taxpayers or when it has been directed by the legislature to spend that money in a particular fashion or for the benefit of specific entities or individuals? The majority does not contemplate, let alone attempt to answer, the numerous questions that naturally flow from its decision to differentiate between proprietary and possessory interests in property. Nor does the majority persuasively justify the stark contrast between its interpretation of the embezzlement statute and our legislature's treatment of theft (embezzlement's direct ancestor) and other property crimes.

¶29 Because I believe the majority misinterprets the embezzlement statute, and because I am concerned about the consequences of today's decision, I cannot in good conscience join Part II-B of the majority's opinion. I would conclude instead that "property of the state," as that phrase is used in the embezzlement statute, refers to property over which the state has a proprietary or possessory interest

3

—i.e., property over which the state has the type of "interest held by a property owner together with all appurtenant rights," *Proprietary Interest*, Black's Law Dictionary (11th ed. 2019), or property over which the state has "[t]he present right to control [the] property, including the right to exclude others" from it, *Possessory Interest*, Black's Law Dictionary (11th ed. 2019). In so doing, I would avoid distinguishing between proprietary and possessory interests in property, a distinction which is fraught with peril.[1] Accordingly, I respectfully concur in part and dissent in part.

## II. Analysis

### A. The Embezzlement Statute Is Ambiguous

¶30 The majority falters right out of the gate. It concludes that the embezzlement statute is clear and unambiguous. Maj. op. ¶ 14. It is not.

¶31 Section 18-8-407(1) provides, in pertinent part, as follows:

> Every public servant who . . . comes into possession of any . . . public property of whatever description, being the property of the state . . . , and who knowingly converts any . . . such public . . . property to his

---

[1] By way of example, people who finance the purchase of a car nevertheless claim they "own" the car and that the car belongs to them. The same holds true for people who take out a mortgage on a house; they nevertheless claim that they "own" the house and that the house belongs to them. Such individuals may not technically have a proprietary interest in their car or their house. But, for all intents and purposes, they own their car and their house while making payments on them.

own use or to any use other than the public use authorized by law is guilty of embezzlement of public property.

The majority correctly notes that the legislature did not define "public property" in this statute. Maj. op. ¶ 13. It simply referred to "public property of whatever description." § 18-8-407(1). But, as the majority acknowledges, we must consider the phrase that follows in attempting to decipher the meaning of "public property." Maj. op. ¶ 13. After all, the legislature provided some guidance there as to what it meant by "public property": "public property of whatever description, being *the property of the state*." § 18-8-407(1) (emphasis added).

¶32 Where the majority and I begin to part ways is in its largely conclusory determination that "'property of the state' clearly means that the property at issue belongs to the state." Maj. op. ¶ 16. Neither of the cases the majority cites, *Wright v. People*, 91 P.2d 499, 502–03 (Colo. 1939), and *Starr v. People*, 157 P.2d 135, 137–38 (Colo. 1945), holds that "property of the state" in the embezzlement statute "clearly means that the property at issue belongs to the state." As the majority admits elsewhere in its opinion, the question we confront today is one "of first impression." Maj. op. ¶ 1. It is just as easy to cite a different Colorado case and reasonably maintain that "property of the state" clearly means property in which the state has a proprietary or possessory interest. *See Price v. People*, 240 P. 688, 689 (Colo. 1925) (an embezzlement case in which this court treated money held in

5

trust, as opposed to owned, by a municipality as money that "*belonged* to the municipality" (emphasis added)).

¶33　Even assuming the majority draws a fair inference in defining "property of the state" as "property . . . [that] belongs to the state," it arbitrarily equates "belongs" with ownership.  In *Wright* and *Starr*, we did not entertain whether property in which the state has only a possessory interest may be deemed property of the state for purposes of the embezzlement statute.  That issue simply wasn't before the court in those cases.  In fact, neither case dealt with the embezzlement statute.  And the majority does not articulate why having a possessory interest in property cannot suffice to support a claim that the property *belongs* to the state.  In other words, if the state has the present right to control the property and to exclude others from it, why isn't it accurate for the state to claim that the property belongs to it?

¶34　The definition of "belong" highlights the flaw in the majority's analysis.  Property "belong[s]" to someone if it's "the property of [that] person."  *Belong*, Merriam-Webster Online Dictionary, https://www.merriam-webster.com/ dictionary/*belong*; [https://perma.cc/A65F-UPT6]; *see also Belong*, Black's Law Dictionary (11th ed. 2019) (defining "[b]elong" as "[t]o be the property of a person or thing").  In ruling that the embezzlement statute applies only to property owned by the state, the majority explains that this is so because "*property of* the state"

6

means property that "belongs" to the state. Maj. op. ¶ 16. But given the definition of "belong," that does nothing more than beg the question. The majority essentially says that the embezzlement statute is limited to property in which the state has a proprietary interest because "property of the state" is "property of the state." *See id.* In my view, this type of circular reasoning cannot support the majority's assertion that the statute clearly and unambiguously excludes property in which the state has a possessory, but not a proprietary, interest.

¶35 Nor do I find persuasive the majority's contention that its position is corroborated by the fact that what the embezzlement statute prohibits is the conversion of public property "to any use other than the public use authorized by law." *Id.* at ¶ 17. I agree that this language limits the scope of the embezzlement statute to property that has a "public use authorized by law." But relying on this phrase, the majority takes an unjustified leap and announces that "the statute's intended focus is on property owned by the state." *Id.* The majority does not explain why this is so. Why can't property in which the state has a possessory interest be property with a "public use authorized by law"? Asked differently, why does the state have to own property in order to put it to a public use authorized by law?

¶36 The majority turns to the facts of this case to buoy its hypothesis, but this case's facts actually undercut the majority's proposition. Though the majority says

7

that the firearms Berry took from the evidence locker had no "public use authorized by law," *id.*, the opposite is true. The firearms were being held by the sheriff's office as part of the prosecution of J.V. They were part of the evidence collected in J.V.'s criminal case. As such, they absolutely had a "public use authorized by law," even though the state had a possessory, but not a proprietary, interest in them.

¶37 The dictionary definitions of "public property" on which the majority relies do not alter the analysis either. To begin, the majority's focus on "public property" misses the mark; the focus must be on "property of the state" because that is what the legislature has told us "public property" refers to in the embezzlement statute. Thus, rather than embark on a quest to unearth dictionary definitions of "public property," I would hone in on "property of the state" and inquire whether the legislature intended that phrase to restrict the ambit of the embezzlement statute so as to exclude property in which the state has a possessory, but not a proprietary, interest.

¶38 In any event, as the majority concedes, Merriam-Webster Dictionary defines "property" as "something owned *or possessed*." *Id.* at ¶ 18 (emphasis added). Black's Law Dictionary likewise defines "property" as including "the right *to possess* and use." *Id.* (emphasis added). Perhaps recognizing that these definitions undermine its holding, the majority dismisses them out of hand, choosing instead

8

to speculate that "the more common meaning of the word 'property' is something owned." *Id.* The majority cites no authority in support of this pronouncement, and I'm not aware that any exists. The very dictionary definitions of "property" quoted by the majority belie its claim. In my view, the definition of "public property," considered in a vacuum, cannot rescue the majority. It makes no sense to admit that "property" includes something possessed but to claim in the same breath that "public property" does not. If "property" is not limited to something owned, how can property that happens to be "public" be so limited?

¶39 Because the legislature did not define "property of the state," and because that phrase is subject to different reasonable interpretations—i.e., it could be construed as property in which the state has a proprietary interest or as property in which the state has a proprietary or possessory interest—it is ambiguous. "A statute is ambiguous if it is susceptible to multiple reasonable interpretations." *Carrera v. People*, 2019 CO 83, ¶ 18, 449 P.3d 725, 729.

¶40 Therefore, I would discern the legislature's intent by looking beyond the language of the statue and considering "other tools of statutory construction." *Id.* I would invoke two such interpretive aids here: (1) "other statutes bearing on the same or similar subjects," *see People v. Sorrendino*, 37 P.3d 501, 503 (Colo. App. 2001); *accord* § 2-4-203(1)(d), C.R.S. (2019) ("If a statute is ambiguous, the court, in determining the intention of the general assembly, may consider . . . laws upon the

9

same or similar subjects."); and (2) "the consequences of any given construction," *Carrera*, ¶ 18, 449 P.3d at 729; *accord* § 2-4-203(1)(e) ("If a statute is ambiguous, the court, in determining the intention of the general assembly, may consider . . . [t]he consequences of a particular construction.").

## B. Other Tools of Statutory Construction

## 1. Statutes Bearing on Similar Subjects

¶41 I start with the theft statute, section 18-4-401, since embezzlement descends directly from larceny, the first theft crime at common law. *See* 3 Wayne R. LaFave, Substantive Criminal Law § 19.1(a), at 57 (2d ed. 2003). In general, a person commits the crime of theft when, under the circumstances listed in section 18-4-401(1), he "knowingly obtains, retains, or exercises control over anything of value *of another* without authorization or by threat or deception." § 18-4-401(1) (emphasis added). Subsection (1.5), in turn, states that "a thing of value is that *of 'another'* if anyone other than the defendant has a *possessory* or proprietary interest therein." § 18-4-401(1.5) (emphases added).

¶42 Significantly, the language in the theft statute is similar to the language in the embezzlement statute. The former uses anything of value "of another," whereas the latter uses property "of the state." If a thing of value "of another" includes property in which another has a possessory, but not a proprietary,

10

interest, why doesn't property "of the state" include property in which the state has a possessory, but not a proprietary, interest?

¶43    I also draw guidance from section 18-4-101, which provides the definitions that apply to all of the crimes against property unless the context requires otherwise.  This includes the crimes of theft, robbery, burglary, arson, trespass, tampering, and criminal mischief.  In subsection (3), section 18-4-101 provides that "*[p]roperty* is that *of 'another'* if anyone other than the defendant has a *possessory* or proprietary interest therein."  (Emphases added.)

¶44    Thus, for example, under section 18-4-506, C.R.S. (2019), a person commits the crime of second degree tampering when he "tampers with *property of another* with intent to cause injury, inconvenience, or annoyance to that person or to another."  (Emphasis added.)  Similarly, section 18-4-103(1), C.R.S. (2019), states that a person commits the crime of second degree arson if he "knowingly sets fire to, burns, causes to be burned, or by the use of any explosive damages or destroys, or causes to be damaged or destroyed, any *property of another* without his consent, other than a building or occupied structure."  (Emphasis added.)

¶45    The language in these statutes is nearly identical to the language in the embezzlement statute.  The second degree tampering and second degree arson statutes refer to "property of another," while the embezzlement statute refers to "property of the state."  Given that "property of another" includes property in

11

which another has a possessory, but not a proprietary, interest, "property of the state" should likewise include property in which the state has a possessory, but not a proprietary, interest. Just as someone accused of second degree tampering or second degree arson may not defend against such a charge by claiming that the victim had a possessory, but not a proprietary, interest in the property in question, so too, someone accused of embezzlement should be precluded from defending against such a charge by claiming that the state had a possessory, but not a proprietary, interest in the property in question.[2]

¶46 The majority attempts to write off these statutory provisions by pointing out both that embezzlement appears in a different article of the criminal code than crimes against property and that the identity of the property owner (the public) "is an essential" element of the former but "largely inconsequential" for purposes of proving the latter. Maj. op. ¶¶ 15, 18. In general, I don't have a bone to pick

---

[2] Interestingly, the "[d]efacing property" statute, which also appears in the article governing property crimes, includes a provision that refers to a cave that is either "public property or the property of another." § 18-4-509(1)(c)(I), C.R.S. (2019). There is no basis to believe that "public property," as used there, refers only to property in which the state has a proprietary interest, but that "property of another" refers to property in which someone other than the defendant has a proprietary or possessory interest. *See id.*

12

with these observations. But they are largely irrelevant to the analysis: Neither advances the ball for the majority or refutes any part of this dissent.

## 2. Consequences of the Majority's Statutory Interpretation

¶47 I am also troubled by the majority's opinion because it will lead to absurd results. After today's holding, a public employee who knowingly converts to his own use property in which his employer has a possessory, but not a proprietary, interest (such as property held in a fiduciary capacity) cannot be charged with embezzlement. But if the same public employee engages in exactly the same conduct under precisely the same circumstances, except that the government happens to have a proprietary interest in the property converted, he may be charged with embezzlement.

¶48 To illustrate the point, I borrow from a few of the hypothetical examples presented by the People. Assume, for example, that a public employee takes an older model truck owned by the city and uses it unlawfully to drive his children to the park every day for three years, while another public employee takes a new car leased by the city and engages in the same conduct as the first employee. Under the majority's rationale, the former employee can be charged with embezzlement, but the latter employee cannot.

¶49 Assume further that a government agency collects child support and holds the funds until they can be disbursed to the intended recipients. If a staff member

13

of the agency were to convert some of those funds to his own personal use, he would be exempt from punishment for embezzlement because the government did not have a proprietary interest in the money. The same outcome would result if the funds collected and converted were designated as restitution payments for victims of crime.

¶50 Finally, assume that a public employee takes his agency's expensive office equipment home and converts it to his personal use. If the office equipment was owned by his employer, he may be guilty of embezzlement, but if, as is often the case, the office equipment was leased, he would be exempt from punishment for embezzlement.

¶51 It is difficult for me to accept that these are the absurd results the legislature envisioned when it referred to "property of the state" in the embezzlement statute. Of course, we are required to presume that the legislature did not intend such absurd results. *Carrera*, ¶ 17, 449 P.3d at 729 (cautioning that "we must 'avoid constructions that would . . . lead to illogical or absurd results'" (quoting *McCoy v. People*, 2019 CO 44, ¶ 38, 442 P.3d 379, 389)).

## III. Conclusion

¶52 In sum, the majority mistakenly determines that the embezzlement statute is clear and unambiguous. It then misconstrues the phrase "property of the state" to exclude property in which the state has a possessory, but not a proprietary,

14

interest. For these reasons, and because today's opinion will lead to absurd results, I write separately with respect to Part II-B. I therefore respectfully concur in part and dissent in part; I would reverse the judgment of the court of appeals.

I am authorized to state that CHIEF JUSTICE COATS joins in this concurrence in part and dissent in part.